DENNIS T. CHOPELAS *vs.* GEORGE H. CHOPELAS & others, trustees.

Middlesex.    February 4, 1936. — April 17, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Equity Jurisdiction*, To enforce trust, Accounting.    *Trust*, Accounting by trustee.

A plaintiff in a suit in equity having been adjudged to be entitled as *cestui* to an accounting by a trustee, and the suit having been referred to a master to state the account, the burden was on the trustee to prove the facts and figures which would constitute an account; and a report by the master, without statement of account, but stating that "the reason for the controversy is that" the plaintiff "was disappointed in not receiving dividends," and that he had "not made out a case which entitles him to recover in equity," though confirmed, did not warrant a decree dismissing the bill, and the decree was reversed and the suit ordered to stand for a statement of account.

BILL IN EQUITY, filed in the Superior Court on June 13, 1934.

The suit was referred to a master. By order of *Morton*, J., there were entered an interlocutory decree overruling exceptions by the plaintiff and confirming the report of the master, and a final decree dismissing bill. The plaintiff appealed.

*H. J. Booras*, (*J. A. Edgerly* with him,) for the plaintiff.
*W. M. Blatt*, for the defendants.

PIERCE, J. This is a suit in equity wherein the plaintiff, as a shareholder under the declaration of trust of the Trafton Realty Trust, seeks an accounting by the trustees of the trust, and their removal as trustees and the appointment of one or more trustees to fill the vacancies thereby created. The case comes before this court on an appeal from a final decree in the Superior Court dismissing the plaintiff's bill of complaint.

The bill of complaint charges, and the defendants in their answer admit, the following facts: The defendants are

trustees under a declaration of trust dated June 28, 1920, which is duly recorded in the registry of deeds of Middlesex County. The beneficiaries under the trust own one thousand shares (of the par value of $50), of which the plaintiff owns one hundred sixty-seven shares, the defendant George H. Chopelas owns one hundred sixty-seven shares, and the defendants Vassilios K. Arvanitis and Christos A. Chopelas each own three hundred thirty-three shares. The only land owned by said trust is a parcel acquired under the declaration of trust in the city of Malden, upon which there is a building used or designed for stores. One tenant called the Converse Square Lunch Co. is a corporation duly organized under the laws of the Commonwealth of Massachusetts. The capital stock of this corporation is owned by the defendants. Another tenant is called the Converse Square Market. This tenant gave to the defendants as security for rent a mortgage on its personal property, which was foreclosed. The bill of complaint alleges, on information and belief, that the proceeds of the foreclosure were put by the defendants into the Converse Square Lunch Co. and charges that "no accounting therefor has been made by the defendants as trustees of said Trafton Realty Trust." This charge is denied in the defendants' answer. The bill of complaint further charges that the defendants have reduced, since 1928 or thereabouts, the yearly rental of the Converse Square Lunch Co. from $3,600 to $1,200 and that the plaintiff is informed and believes that no rent at all has been collected for several years. The defendants admit that the rent was reduced in 1929, and deny the other charges. The bill of complaint charges and the defendants deny, that "the defendants have violated the clause in said trust instrument which provides that they 'shall keep or cause to be kept proper books which shall at all reasonable times be open to the inspection of any shareholder'" and that they "shall each year make a financial report to the shareholders." The defendants in their answer to the plaintiff's bill of complaint say that the certificate of shares in said trust held by the plaintiff was issued to him on the

third day of November, 1932, and deny that the plaintiff is entitled to inquire into any transactions of the trust prior to that date.

On January 22, 1935, the case was referred to a master "to find the facts as to whether an accounting should be had and if so, from what date." There was a hearing by the master under the rule on February 4, 1935, a draft report was submitted and a further hearing was had on the draft report on February 11, 1935. The record does not disclose that any objections were filed to the report. The master found that "the plaintiff is entitled to an accounting and that such accounting should be from the time of the acquisition of the real estate, June 28, 1920." The report states that "Counsel for the defendants also saved his rights on my finding that the plaintiff was entitled to an accounting."

The master's report was filed February 15, 1935, and after argument by counsel was confirmed by an interlocutory decree on April 2, 1935. On the same day the case was referred to the same master "to hear the parties, and to make an accounting in accordance with" his report previously filed. On April 6, 1935, the defendants moved to revoke the order of reference entered April 2, 1935, assigning as reasons therefor: "First. That the master's report confirmed on the second day of April, 1935, does not warrant the ruling that the plaintiff is entitled to an accounting. Second. That the defendants were not permitted to present arguments to the court on this question. Third. That the master named in said order is not a suitable person." On April 12, 1935, after hearing this motion was denied by the judge, and the defendants appealed.

The defendants have not pressed an appeal from the interlocutory decree confirming the first report of the master nor their appeal from the order entered on April 12, 1935, denying the defendants' motion to revoke the order of reference to a master or to the master appointed by the court. The finding of the master that the plaintiff is entitled to an accounting from June 28, 1920, is decisive as to the right of the plaintiff to an accounting and as to the period of time to be covered by the accounting.

Pursuant to the order of April 2, 1935, by inference, it appears that the master heard the parties and their evidence, presented a draft report, received the objections of the plaintiff, which appear in the record, and filed his final report on October 2, 1935, to which he attached a copy of the declaration of trust. The master's final report of material facts is concisely stated, and reads as follows: "1. One Edward F. Buckley on May 28, 1920, conveyed to the defendants herein, as joint tenants, a certain parcel of land in Malden in said County, by deed recorded in Middlesex South District Registry of Deeds Book 4357 Page 326. 2. Soon thereafter, to wit, June 28, 1920, a declaration of trust was entered into, under the name of Trafton Realty Trust, in which the defendants were the trustees, copy of said declaration of trust being hereto annexed. 3. The only assets of the trust consisted of said parcel of land conveyed by said Edward F. Buckley to the defendants. 4. The declaration of trust was recorded in said Registry of Deeds on June 29, 1920, in Book 4366 Page 336. 5. The plaintiff neither appeared in said deed nor in said declaration of trust. 6. The declaration of trust contemplated that there should be transferable certificates of shares, one thousand in number, of the par value of fifty dollars. 7. The only limitation for the transfer of the certificates was that they should be transferable only on the books of the trustees, upon their surrender duly endorsed, or, with the consent of the trustees in some other way given and the acceptance of the certificates of shares would make the person therein named a shareholder. 8. All of the shares were represented by the plaintiff and defendants who were related to one another. They were countrymen of each other and were all close friends. 9. Upon the parcel of real estate acquired by the defendants, there was built by them a four store building in said Malden, one of which stores has been occupied since June 1921 by the Converse Square Lunch Co., a corporation owned by the defendants, at an annual rental varying from $3600 to $1200 the store building being constructed soon after the acquisition of the land and was financed by all of the parties putting more or less of their money into the prop-

osition and by two mortgages. 10. The store building was completed on or about January 1922 and because of the overhead and an endeavor to pay off the second mortgage there was no seeking an accounting, until the present bill in equity was brought, nor was there any division of the receipts, for there was no particular surplus to be divided. 11. At or about the time of the completion of the building, the defendant, George H. Chopelas, one of said trustees, assigned 167 shares of his stock in said trust to the plaintiff by an instrument dated January 5, 1922, a copy of which is annexed to my earlier report. 12. The plaintiff theretofore had but one share of stock. 13. There was no physical transfer of certificates, for no certificates existed until November 2, 1932, on or about which date all of the defendants, being all of the trustees, issued certificates to themselves and 167 shares to the plaintiff. 14. Certificate No. 1 for 333 shares was issued to Christos A. Chopelas; Certificate No. 2 for 333 shares was issued to Vassilios K. Arvanitis; Certificate No. 3 for 167 shares was issued to George H. Chopelas, Certificate No. 4 was issued to George H. Chopelas, surrendered, and then 167 shares was issued to Dennis T. Chopelas, the plaintiff, as shown by Certificate No. 5. Certificate No. 5 was dated November 3, 1932. The other certificates were issued November 2, 1932. 15. The plaintiff was in the business venture, as contemplated from the declaration of trust, from a time at or about the acquisition of the land, or, certainly at or about the completion of the stores in January 1922. The plaintiff carried on somewhat with the defendants, who, together with himself pursued the declaration in an unbusinesslike way, to wit, in not issuing proper certificates of stock. 16. It was later brought to the attention of all parties that certificates of stock should be issued and that was done, as appears heretofore in this report. 17. The plaintiff's bill prays that there be a determination of the assets and liabilities of said trust. 18. The defendants had a very limited method of keeping their records, the only record books being a check book and a rent book which contained other transactions incomplete. Their annual reports were taken care of by a public account-

ant, and, although not a certified accountant, he was a capable man. 19. There was an interlocking of transactions between the Trafton Realty Trust, the landlords, and the Converse Square Lunch Co., tenant, of which company the defendants have been and are the only stockholders and directors. 20. Money that was loaned for various purposes by the individual defendants to the trustees of the trust was repaid somewhat by rent. 21. At the time of the hearing, there was no rent due by the defendants doing business as Converse Square Lunch Company to the Trafton Realty Trust. 22. Plaintiff, also, made some loans to the trust which had been repaid to him. 23. The Converse Square Lunch Company originally paid $3600.00 a year as rent for their lunch room, which, from time to time was cut down to $1800 in 1929 and later and up to 1933 to $1200.00 and from 1933 to the present time the rent has been $2400. The reasons advanced for this change of rent was the depression and the rental value of the store. The rent charges were made by the trustees. 24. Separate bank accounts were kept by the Trafton Realty Trust and the Converse Square Lunch Company, the place of deposit being the Second National Bank of Malden. 25. Annual income tax returns, both Federal and State were kept for the parties interested by said accountant, all of which I examined. 26. While the bill in equity did not allege it, it was contended that the defendants, as stockholders, were paid dividends and that in the distribution the plaintiff was ignored. 27. I find that no dividends were paid to any of the stockholders for not enough had been earned to warrant it. 28. The annual earnings from the trust investment of about $125,000 were very small, running for several years about $1,000 each year and finally, not only was there no earned income but there were annual losses. 29. December 31, 1933 showed a book value of the stock to be $7838.26. 30. There were no liquid assets except cash amounting to $1385.82. All the witnesses who testified were called by the plaintiff and there was no evidence of the value of the store building and encumbrances thereon so I do not report it as an asset. 31. I find that the plaintiff had a very limited

knowledge as to what it meant to be a shareholder in any corporation or under any declaration of trust issuing transferable shares and the reason for the controversy is that he was disappointed in not receiving dividends on the stock that he had under a declaration of trust that was unable to pay dividends. 32. I find on all the evidence that the plaintiff has not made out a case which entitles him to recover in equity and his bill should be dismissed. 33. Eleven requests for findings and rulings were made by the defendants and as to those not covered in this report, I deny them."

The plaintiff's objections to the master's report are as follows: "1. For that the Master finds in Paragraph 20, that 'the individual defendants' made loans to the trustees of the trust, which were repaid 'somewhat by rent'; but the report contains no finding that the individual defendants were tenants of the trust. 2. For that the Master finds in Paragraph 21, that at the time of the hearing no rent was due the trustees from the Converse Square Lunch Company; but the report contains no finding that the reductions in rent as disclosed by the findings in Paragraph 23 are fair and reasonable. 3. For that a report which contains no schedule of receipts or disbursements by the trustees cannot be deemed an account or accounting as required by the rule to the Master. 4. For the report of the Master discloses no accounting, as is directed by the rule to the Master. 5. For that the report contains no finding as to the assets and liabilities of the trust. 6. For that the report discloses that the only record books kept by the trustees were a check book and a rent book, 'which contained other transactions incomplete' yet despite the requirement of the Declaration of Trust that the trustees shall keep or cause to be kept proper books, and the unbusiness-like method of keeping accounts, the Master finds that the plaintiff has not made out a case in equity, and that the plaintiff's bill should be dismissed. 7. For that an account or accounting which fails to show in any manner the receipts and disbursements of the accountants is as matter of law no account or accounting. 8. For that while the report shows that the building owned by the

trustees contains four stores, the report contains no finding as to the aggregate amount of rent received by the trustees. 9. For that the Master by his finding that the plaintiff's bill should be dismissed, inferentially finds that the defendant trustees have discharged their duties as trustees with reasonable skill, prudence and judgment, including the duty to keep proper books of account, and the duty of accounting to the plaintiff at reasonable times, yet the report discloses that the defendants have not kept proper books, nor is there any finding that any accounting has ever been heretofore rendered, as in the Declaration of Trust provided."

Upon the filing of the master's report on October 2, 1935, and the plaintiff's objections to the master's report filed November 13, 1935, the judge, on the defendants' motion to confirm the report, after argument of counsel entered an interlocutory decree overruling the exceptions filed November 13, 1935, and confirming the report filed February 15, 1935, and the report of the master filed October 2, 1935, and ordered a final decree to be entered dismissing the bill without costs; the final decree was entered December 3, 1935. The plaintiff appealed.

Assuming that the plaintiff is entitled to an accounting from the defendants from June 28, 1920, as the master found, we find in the second report of the master no statement of the assets of the trust on June 28, 1920, nor any yearly statement of the financial condition of the trust from that date to the date of the bill. There is nothing in the report upon which a statement of the trust's condition from June 28, 1920, or a yearly statement of its condition can be reconstructed. Notwithstanding the slack methods of keeping the records of the trust, it is inconceivable that a substantial statement of the yearly financial condition of the trust should be beyond the ability of an accountant to reconstruct. "The plaintiff had the burden of proving that a trust relationship . . . existed . . . but, that being established, the defendant had the burden of proving that it had discharged its duties as trustee with reasonable skill, prudence and judgment, including the duty to account to the beneficiary at reasonable times." *Knowlton* v. *Fourth-*

*Atlantic National Bank of Boston,* 271 Mass. 343, 350. *Ashley* v. *Winkley,* 209 Mass. 509, 525. It is obvious that the responsibility for making an accounting can be satisfied only by putting the beneficiary in possession of information as to just what sums have been received by the trustees, and, with some particularity, disclosing the amount of disbursements, when they were made and to whom. Am. Law Inst. Restatement: Trusts, § 172 (c).

The decree must be reversed and the case stand for further statement of the receipts and expenditures by the trustees.

*Decree reversed.*