BESSIE MARKUS *vs.* SELMA R. MARKUS & others.

Suffolk.     February 3, 1954. — May 6, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Trust,* Termination, Income beneficiary, Accounting, Segregation of
trust funds.

Evidence in a suit in equity justified conclusions that a trustee owning
or controlling virtually all the stock of a corporation closely related
financially with his trust complied with a duty under the terms of his
trust to pay to a beneficiary a specified amount weekly from the
trust exclusive of any amounts paid for services rendered to the corpo-
ration where, with the beneficiary's assent, he caused such required
weekly payments to be made to her by the corporation in the form of
but not in fact as wages for services which were hardly more than
nominal, and that a termination of the trust was not required under a
provision thereof for its termination in case of failure of the trustee
to perform its terms.  [396–398]

Statement by RONAN, J., respecting accounting by the trustee of an
inter vivos trust to a life beneficiary.  [398–399]

Trust funds should be kept in a separate bank account and not be mingled
with personal funds of the trustee.  [400]

BILL IN EQUITY, filed in the Superior Court on May 7,
1953.

The suit was heard by *Morton,* J.  On appeal by the
plaintiff, there was a report of material facts and a report
of the evidence.

*Arthur L. Brown,* (*David Sanderson* with him,) for the
plaintiff.

*John R. Wheatley,* for the defendant Selma R. Markus.

RONAN, J.  This is an appeal from a final decree entered
in a suit brought by the life beneficiary under two inden-
tures of trust to have the indentures declared null and void,
to have the trusts terminated and to order the defendant
Selma R. Markus to turn over all the trust property to
the plaintiff, and for an accounting.  The defendants are

Selma R. Markus, individually, as administratrix of the estate of her husband, Israel Allan Markus, a former trustee, and as a present trustee, the plaintiff's six children, and various banks.

The plaintiff is the widow of Meyer Markus, who for several years prior to his death in 1929 conducted a fuel business. She became the owner of the business upon his death. It was carried on in her behalf by her son, Israel Allan Markus, hereinafter called Allan, as soon as he became sufficiently experienced to do so. The business was incorporated in 1933. The plaintiff owned 529 shares in the fuel company, hereinafter called the corporation, which was all the outstanding stock except two qualifying shares. The plaintiff also owned two dwelling houses in Brockton, one located upon North Montello Street containing four apartments, and the other on Falmouth Avenue having six apartments. Under the terms of an indenture dated June 26, 1940, she transferred this real estate and the shares of stock to her sons, Allan and Samuel, as trustees. She was to have, rent free, an apartment in the North Montello Street house, which the trustees were to keep in repair, and they were to pay her $45 weekly out of the proceeds of the trust. If the proceeds were insufficient to pay this amount, the trustees were individually to contribute equally to make up the deficiency; they were, in addition to whatever weekly payments she might receive from the corporation for services, to pay her from the corporation such sum or sums not exceeding $500 at one time when, in their judgment and discretion, they deemed it advisable to do so. They were to pay all reasonable expenses for the education and maintenance of their sister Josephine until she married or until the termination of the trust. The trust if all terms were complied with was to terminate in a certain period after the death of the plaintiff and certain payments were to be made to all of her daughters except Ida. The trust was to terminate if both trustees predeceased the plaintiff or upon their failure to perform any of the conditions of the trust. In the event that either trustee died before the termination

of the trust the surviving trustee was upon such termination to take all the property after making the aforesaid payments to the daughters. The amounts paid to any beneficiary were to be exclusive of any amounts paid for services rendered to the corporation. The trust was amended on November 14, 1949. Samuel became a beneficiary instead of a trustee and his sister Ida was included as a beneficiary. Allan became the sole trustee and on his death he was to be succeeded by his wife, the defendant Selma R. Markus. Allan was to receive all the trust property if he survived his mother upon the termination of the trust after making certain payments to his brother and five sisters but, if he did not survive his mother, Selma as surviving trustee was to have the said property upon the termination of the trust after making said payments.

The contention of the plaintiff that she was induced by the fraud of Allan to sign the second indenture and a similar contention of her children that they were fraudulently induced to execute the second indenture are not supported by the evidence. It appears from the judge's findings that the contents of each instrument were explained to the plaintiff before she executed the indenture and that the contention of the children "borders on the fantastic." He found that there was no fraud in the execution of either instrument.

The principal contention of the plaintiff is that the failure to pay her $45 a week out of the trust, supplemented if necessary by payments out of the personal funds of the trustees or trustee as the case may be, was a failure upon their part which required the termination of the trust, and that the weekly payments made by the corporation for services rendered by her could not be credited as payments from the trust as that would be contrary to the express terms of the trust.

The parties were not strangers. The plaintiff knew the terms of the trusts and acquiesced therein, and consented to receiving the weekly payments from the corporation. She knew the source of these payments. She made no de-

mands upon the trustees to pay her from the proceeds of
the trust. The only thing that she and her children did
not contemplate was that Allan might die before the ter-
mination of the trust, in which event his wife Selma would
succeed him as trustee and upon termination of the trust
take the balance of the trust property remaining after cer-
tain payments were made. We agree with the judge that
if Allan had continued as trustee the present controversy
would not have arisen.

The judge found that the trustees complied with the terms
of the trust by paying the plaintiff $45 less the incidental
deductions for social security, Blue Cross, and taxes, and
by making some additional payments to her in their dis-
cretion; and that although technically payments should
have been made to her from the trust assets, the fact that
they came from corporation funds was no reason for ter-
minating the trust. The trustees owned or controlled as
trustees all the shares of the corporation, except qualifying
shares. He found that all the terms of the trusts have been
carried out.

To be sure, as pointed out by the judge, the shares of
stock and not the assets of the corporation were held in
trust. The assets belonged to the corporation but the cor-
poration was owned by the trust. If the assets had been
converted into dividends paid to the trustees and by them
distributed to the plaintiff, there could hardly be any com-
plaint that the payments did not come from trust prop-
erty. If the corporation was able to and did make these
weekly payments, it seems that it could make these pay-
ments out of dividends payable to its only real stockholder.
The judge made no finding whether weekly payments of
$45 were payments of wages. They could hardly be con-
sidered as such in view of the almost entire lack of services.
We are satisfied from an examination of the evidence that
they were not really payments for services. Being so
labeled upon the books of the corporation and upon tax re-
turns did not change their nature. We agree with the judge
that the fact that the payments were made in the form of

wages rather than in some other form did not call for the termination of the trust.

The relationship between the corporation and the trust was close. Not only did the parties to the trust indentures agree to vote for the election of certain officers of the corporation but the trustees in their discretion were to make additional payments to the plaintiff from corporate funds, if in their discretion they could be made, and the income of the corporation was to be computed and paid to the plaintiff's children in certain amounts and for a certain period in bringing the trust to an end.

We need not further discuss the close financial relationship between the corporation and the trust. We are satisfied that the plaintiff assented to the arrangement whereby the obligations of the trust were discharged by payments by the corporation cast in the form of wages for services which at most were hardly more than nominal. The rights of the defendant children have not been shown to be affected adversely. We cannot say that the finding that the terms of the trusts were fully carried out was plainly wrong. See *Lannin* v. *Buckley*, 256 Mass. 78, 82; *Lipsitt* v. *Sweeney*, 317 Mass. 706, 713; *Hall* v. *Evans*, 326 Mass. 691.

We next discuss the matter of accounting. The plaintiff, a life beneficiary, is entitled to a full and complete account even though the trust has not terminated. Restatement: Trusts, § 172. *Chopelas* v. *Chopelas*, 303 Mass. 33. The account should state with mathematical certainty the balance which the trustee holds in trust for the beneficiary. The accounting should settle and adjudicate the financial condition of the trust up to the date of the account. It should be so full and complete as to put to rest any existing controversy and sufficient to serve as the basis for any future accounting. See *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 61; *Cavazza* v. *Cavazza*, 317 Mass. 200, 208–209. It is the duty of Selma R. Markus, as administratrix of the estate of Allan, to furnish an accounting of his handling of the trust property although, if it is found that an amount is due against his estate, she is not to be held personally liable ex-

cept for costs. *Akin* v. *Warner*, 318 Mass. 669, 675. She of course must account for her own actions as trustee since she succeeded her husband to that office. Where a trust is established the burden is upon a trustee to show that he acted with reasonable skill and judgment and to account for all the trust property which came into his possession. If unable to account he must stand the loss. *Little* v. *Phipps*, 208 Mass. 331. *Knowlton* v. *Fourth-Atlantic National Bank*, 271 Mass. 343, 350–351. *Rugo* v. *Rugo*, 325 Mass. 612, 617.

We first discuss the real estate. One of the parcels was sold in 1947 for $10,000. Allan received the proceeds of this sale. The evidence does not show what he did with the money. Some or all of it might have been transferred to the trust funds. That is a matter of conjecture. The judge was plainly wrong in finding that, "although there was no definite evidence as to the disposition of these proceeds, . . . it is part of the amount making up the total trust estate, exclusive of shares of stock as above set forth." The total trust estate, aside from the shares of stock, was found by the judge to amount to between $20,000 and $25,000. That does not constitute the stating of a definite and specific figure which it was the duty of the judge to ascertain and determine. Neither did it show the various items that were included as making up the account. The parties were entitled to know how it was computed and the manner in which the balance was reached.

The rent account was kept by the corporation. The evidence was far from persuasive that this account was accurate and complete. Certain items appearing in this account indicate withdrawals of sizable sums for the personal benefit of Allan, the ultimate disposition of which does not appear in any accounting.

As there must be a further accounting we need to discuss only briefly the accounting of the personal property. The defendant Selma produced at the trial several bank books which we assume related to the coöperative bank shares, although the record is not clear, and which showed credits

amounting to $21,500. The books stood in the name of Allan, trustee for Bessie Markus, and after his death were changed to Selma R. Markus, trustee for Bessie Markus. There was also a joint account in the name of Allan and the plaintiff which the plaintiff now claims. The pass book was enclosed in an envelope upon which Allan had written "Trustee, Bessie Markus." It would serve no useful purpose to discuss the evidence relative to all these accounts, for it is enough to say that the findings of the judge that they are the property of the trust have not been shown to be plainly wrong and consequently they cannot be disturbed. In the new accounting it would be better practice to list the personal property and to set out the value of each item.

The dividends from the banks have been received by the defendant Selma and deposited in her personal account. Although she has kept track of them and spent none of them, they should be kept separate in a trustee account. Trust funds should not be mingled with personal funds of the trustee. *International Trust Co.* v. *Boardman,* 149 Mass. 158. *Attorney General* v. *Bedard,* 218 Mass. 378. Restatement: Trusts, § 179.

It follows that the interlocutory decree, entered after the appeal was taken from the final decree, ordering the plaintiff as president and treasurer to sign a new certificate of the common stock to the defendant Selma as trustee is vacated.[1] The final decree must be modified by adding thereto a paragraph adjudicating the account when that has been settled and by changing the twenty day period presently appearing in the fifth and seventh paragraphs of the decree to twenty day periods from the entry of the new final decree.

*So ordered.*

---

[1] The Superior Court may upon the request of this defendant enter such an interlocutory decree during the pendency of the suit as it deems appropriate to protect her rights as trustee in the stock.