**Lucille ENGELSMANN and Elsa Engelsmann Ferry, Plaintiffs-Appellants,**

v.

**Carl H. HOLEKAMP, Jr., as Executor Under the Last Will and Testament of Carl H. Holekamp, Sr., Defendant-Respondent.**

No. 51303.

Supreme Court of Missouri, Division No. 1.

May 9, 1966.

Newell S. Ferry, Clayton, Paul Taub, Overland, for plaintiffs-appellants.

Harry S. Kramer, Walter M. Clark, Armstrong, Teasdale, Kramer, & Vaughan, St. Louis, for defendant-respondent.

HENLEY, Judge.

This is a suit in equity against the executor of the estate of Carl H. Holekamp, Sr., to compel an account of the administration of a certain trust. Plaintiffs pray that they may have judgment against the executor for, and the estate be surcharged with, the amounts determined by the accounting to be due them. The fundamental averments of the petition are that Carl H. Holekamp, Sr., was in his lifetime trustee of a testamentary trust valued in May, 1919, at $49,960, of which plaintiffs are beneficiaries subject to a life estate of their mother, now deceased; that the deceased trustee commingled trust funds with his own property and otherwise violated the trust; that the mother of plaintiffs died shortly after the death of the trustee, and that the executor of the trustee's estate has failed and refused to distribute the trust funds to plaintiffs as required by the trust instrument. The court made and entered findings of fact and conclusions of law. The decree was for defendant and plaintiffs appeal.

Plaintiffs claim that at time of trial the trust fund exceeded $90,000 and that no less than that sum is due them; hence, the amount in dispute is in excess of $15,000 and this court has jurisdiction. Article V, § 3, Constitution of Missouri, V.A.M.S; § 477.040, RSMo 1959, V.A.M.S.

The following facts are not in dispute. Herman E. Engelsmann died testate on April 22, 1918, leaving surviving him Amalie H. Engelsmann (his widow) and the two plaintiffs, Lucille Engelsmann and Elsa Engelsmann Ferry (his daughters). By his will and a codicil he left his residuary estate in trust for the benefit of his widow and daughters. Named in the will as executors, and as trustees of the trust were his brother, George Engelsmann, Amalie H. Engelsmann, and Carl H. Holekamp, Sr., his brother-in-law, and brother of his widow. George Engelsmann and the widow declined to serve as executors, and Carl H. Holekamp, Sr., was appointed executor and served as such until the estate was closed on May 27, 1919. The will directed that the trustees invest the funds of the trust " * * * in income bearing securities, at the highest rate of interest consistent with perfect security." The will provided that the net annual income of the trust be paid in installments of unspecified

amounts to Amalie H. Engelsmann for her life and upon her death to his daughters until they attained the age of 35 years at which time, the widow not living, the trust fund was to be distributed to the daughters. The will also provided that the trustees might encroach upon the principal, if necessary, in case of sickness or other distress of any of the beneficiaries. By the codicil the testator authorized the trustees to encroach upon the principal, if necessary, to pay his widow an income of $300 per month, but limited those payments to her for life and provided that any excess of income over that sum be paid one-half to each of his daughters upon their marriage or reaching the age of twenty-five years. Lucille Engelsmann attained age twenty-five in 1929, and Elsa Engelsmann Ferry in 1931. George Engelsmann did not serve as a trustee. Although Amalie H. Engelsmann declined in writing to serve as trustee she did, as a trustee, join with Carl H. Holekamp, Sr., in executing a receipt to the executor for $49,960. This sum represented the balance in the estate as shown by the executor's final settlement and constituted the corpus of the trust. George H. Holekamp, Sr., died June 16, 1960, and his sister, Amalie H. Engelsmann, widow of Herman E. Engelsmann, died December 22, 1960. The defendant, Carl H. Holekamp, Jr., is the executor of the estate of Carl H. Holekamp, Sr. No part of the trust estate has been paid to plaintiffs.

Plaintiffs' petition, with copies of the will and codicil attached, was filed March 22, 1961. It alleges substantially all of the above facts and further alleges that Carl Holekamp, Sr., as trustee, violated the trust by: (1) commingling assets of the trust estate with his own properties and funds, and (2) investing assets of the trust in properties other than income bearing securities by reason of which losses were suffered. Plaintiffs further allege: (1) that they are entitled to an accounting of the administration of the trust and distribution of its assets, their mother being deceased; (2) that no part of the assets of the trust have been distributed to them; and (3) that they have demanded distribution of said assets from defendant, executor of the estate of the deceased trustee, Carl Holekamp, Sr., but defendant has failed and refused to make distribution.

By his second amended answer defendant admits so much of the facts stated above as are pleaded in plaintiffs' petition, and by way of affirmative defense states: (1) that Amalie Engelsmann did not decline to act as trustee, but did in fact so act; (2) that Carl Holekamp, Sr., made payments to Amalie Engelsmann at the rate of $300 per month from 1919 through 1930 and from 1931 until his death in 1960 at the rate of $150 per month for a total sum in excess of $90,000; (3) that these monthly payments, and other assets of the trust received by Amalie Engelsmann, exhausted the trust estate several years before the death of Carl Holekamp, Sr., and that payments made to Amalie after exhaustion of the trust were from his personal funds; (4) "that payments made to Amalie Engelsmann * * * throughout the years far exceed the amount contained in the trust, taking into consideration a reasonable yield to the trust from investments prudently made"; (5) that Amalie Engelsmann, as co-trustee, consented to and acquiesced in all investments of the trust fund, and consented to and acquiesced in all payments and distributions made to her; (6) that plaintiffs had the right to seek an accounting of the administration of the trust beginning in about 1925, but failed to do so and "slept on their rights" and "acquiesced in the handling of the trust * * * for a period of 35 years" during which period " * * * records have been lost or destroyed, and both Amalie Engelsmann and Carl H. Holekamp, Sr., have died * * * ", by reason of which " * * * plaintiffs' claims are barred by laches."

At the beginning of the trial defendant withdrew his second amended answer and the trial proceeded on the petition and the first amended answer. This answer

did not plead the defense of laches. At the close of the trial defendant requested leave to refile his second amended answer and the court took this request under advisement along with the whole case. The findings of fact and conclusions of law do not indicate a ruling on this request, but for the purposes of this opinion we will treat the pleadings as though the second amended answer had been refiled. We note this defense merely in passing for defendant's brief is silent on the defense of laches. Defendant has abandoned this defense by failing to brief it; it is not before us; and we will not consider it in determining the issues. Stark v. Cole et al., Mo.App., 373 S.W.2d 473, 475 [1]; State ex rel. Webster Groves Sanitary Sewer District v. Smith, 337 Mo. 855, 87 S.W.2d 147, 154 [11]; City of Webster Groves, to use of Wise v. Taylor et al., 321 Mo. 955, 13 S.W. 2d 646 [1].

■ This trial, consuming nearly nine days, produced a transcript of more than seven hundred pages and more than two hundred exhibits. We will not attempt to summarize all the evidence. A statement of the positions and general contentions of the parties with a brief account of the substance of evidence pertinent to these contentions will suffice. Plaintiffs contend that as remaindermen beneficiaries they have a right to an accounting of the administration of the trust; that Carl Holekamp, Sr., was in truth and practical effect the sole and only trustee; that said trustee having died without accounting to them, it is the duty and obligation of his personal representative to account. Plaintiffs also contend that since the executor of the trustee's estate has failed to account, they are entitled to proceed as follows: first, to inquire into the business affairs of Carl Holekamp, Sr., individually, as executor of the estate of Herman Engelsmann, and as trustee, insofar as they pertain to and would produce an accounting of his administration of the trust; second, to show breaches of the trust by the trustee resulting in losses to the trust estate. On the theory that this inquiry would show that there are, or should be, trust assets in a certain amount remaining on the death of their mother in the hands of the executor of the estate of this deceased trustee, they contend that they are entitled to judgment against his estate for that amount and interest. Plaintiffs proved the will and codicil of Herman Engelsmann and the provisions thereof with respect to the trust, the trustees and the beneficiaries. They also proved that Carl Holekamp, Sr., administered the estate of Engelsmann as executor; that the estate was closed in 1919 and that their mother and Carl Holekamp, Sr., received from the estate as trustees $49,960 as the corpus of the trust; that Carl Holekamp, Sr., as trustee, made monthly payments to their mother in amounts corresponding to the amounts specified in the trust instrument from a trust bank account in the names of Amalie Engelsmann and Carl Holekamp, Sr., as trustees, and after that account was closed in January, 1925, from other bank accounts until his death; that their mother, the life beneficiary of the trust, is dead and that they, as remaindermen beneficiaries, have not received an accounting of the administration of the trust, nor its remaining assets they believe an accounting would show now exist.

For the reasons hereinafter stated, we are of the opinion that on these facts alone plaintiffs are entitled to a full accounting of the administration of the trust from the trustees, and, they being dead, from their personal representatives. We note that the estate of Amalie Engelsmann had not been administered at the time of this trial. In the event it is shown (as this record strongly indicates) that Carl Holekamp, Sr., was in fact the sole and exclusive trustee in charge and control of the management of the trust, then plaintiffs are entitled to an accounting from the personal representative of said deceased trustee alone.

Much of this record consists of attempts by plaintiffs to prove: (1) identity of specific items of property constituting the

corpus of the trust at the time it was delivered by the executor to the trustees, and to follow or trace those individual items or their proceeds through the course of administration of the trust to reach an accounting; and (2) breaches of the trust by Carl Holekamp, Sr., as sole trustee, in (a) failing to account to all beneficiaries, (b) investing trust assets contrary to the trust instrument with resultant loss, (c) failing to keep proper records of the trust administration, and, (d) commingling trust assets with his own. The court sustained objections to practically all of this evidence. We have cast plaintiffs' offers of proof in general terms and categories for two reasons: first, because plaintiffs do so and make no specific point of error as to a particular ruling by the court on the admissibility of evidence; second, because the result we reach obviates the need to treat it otherwise.

Defendant takes the position and contends: (1) that payments by Carl, Sr., as one of the trustees, and individually from his personal funds, to Amalie, as the lifetime beneficiary, exhausted the trust fund several years before said trustee's death, and that monies paid Amalie by Carl, Sr., thereafter were in consideration of the brother-sister relationship from his own funds for which defendant is entitled to credit, if necessary, on any accounting; (2) that plaintiffs are not entitled to an accounting, and may not inquire into the matters on which plaintiffs offered proof for the reasons hereinafter stated. Defendant submitted evidence tending to prove: (1) that he had made diligent and extensive search of his father's papers for records of the administration of the trust; (2) that the few he found had no continuity and consisted of partial records of a trust bank account antedating 1925, cancelled checks payable to Amalie drawn on this and other accounts, check stubs, bank ledger sheets, bank deposit receipts, and other scattered memoranda of his father, but that none showed the character of the original corpus or subsequent investments of the trust;

(3) that Amalie had received from the trust and Carl, Sr., (shown by cancelled checks, stubs and other memoranda) the total sum of $93,399.89 in monthly payments; (4) that she had received from another (unknown or undisclosed) source an additional $25,575.36 between 1921 and 1938; and, (5) by bankers and others as expert witnesses, that *if* the trust fund of $49,960 were constantly invested " * * * in income bearing securities, at the highest rate of interest consistent with perfect security * * *, assuming no losses to or expenses of the trust," and assuming payments to Amalie as shown, the trust would have exhausted as early as 1943, and not later than 1954. Although defendant pleads compliance with investment requirements of the trust instrument, there is no proof that the trust fund was so invested. Nor do we understand that defendant now contends that the trust fund was so invested, except by way of the presumption he mentions: " * * * that the trustees acted properly * * *."

Early in their case, plaintiffs called defendant to the witness stand and showed by him some of the payments made by his father to the deceased Mrs. Engelsmann, therefore plaintiffs' evidence somewhat corroborates defendant's evidence as to the dollars paid, but this is not to say conclusively that the trust fund was thereby exhausted.

Defendant insists that plaintiffs are not entitled to an accounting from him, because: (1) "they did not prove that any trust fund existed at the time of Amalie Engelsmann's death", and (2) they "did not prove the existence of any fiduciary relationship between themselves and [him]." He argues: "In order to entitle themselves to an accounting by the estate of Carl Holekamp, Sr., [plaintiffs] were required to show that a fiduciary relationship exists between them and [defendant], the executor of [Carl, Sr.'s] estate. This might have been done in one of two ways: (1) Either by showing that the trust still exists and contains assets of value; or (2) by showing

that the deceased converted trust funds to his own use and that some of such funds are a part of his estate." Continuing with this argument, he says: "It is axiomatic that an accounting will not be required unless there is proof of the existence of a fiduciary relationship"; there is no proof that a trust fund exists, "And, proof of its existence is an essential element to a claim for an accounting." There is little precedent to follow in this jurisdiction on the particular questions involved.

It is unquestioned that a trust was created by the will of Herman Engelsmann, that Carl Holekamp, Sr., was one of the trustees of that trust, and that Amalie Engelsmann was a beneficiary thereof for her life. It may not be questioned successfully that Lucille Engelsmann and Elsa Engelsmann Ferry were remaindermen beneficiaries of that trust. It is unquestioned that the trustee or trustees were empowered to encroach upon the corpus for the purpose of paying a specified monthly income to the life beneficiary which included the power to consume the whole of the corpus for that purpose, so it may very well be that during the lifetime of Mrs. Engelsmann (which included the Great Depression as well as inflationary periods) the whole of the corpus and its increment, if any, were consumed in the support of her and her daughters. But this possible result is not known to be fact; this record does not show it; and it can never be known with certainty until a true account has been taken.

We agree with defendant that an accounting may not be required unless there is proof of the existence of a fiduciary relationship, and that the burden of proving that relationship is upon the plaintiffs. Stark v. Cole, Mo.App., 373 S.W.2d 473, 476; Edwards v. Sittner, Mo.App., 213 S.W.2d 652, 655 [1]; Garrett v. First

National Bank & Trust Co., 5 Cir., 153 F.2d 289, 292 [10]; Chopelas v. Chopelas, 294 Mass. 327, 1 N.E.2d 374, 377 [2]. The existence of a trust and a fiduciary relationship between the trustee or trustees and these plaintiffs as remaindermen beneficiaries has been established. This was established by proof of the trust instrument, the beginning corpus of the trust, and one or both of the named trustees acting. The trustee or trustees stood in a fiduciary capacity first to the primary or lifetime beneficiary, the widow, Mrs. Engelsmann, and secondly to the secondary or remaindermen beneficiaries, these plaintiffs. Morrison v. Asher, Mo.App., 361 S.W.2d 844, 850 [7].

As beneficiaries, plaintiffs would be entitled to demand an accounting of the administration of the trust. Morrison v. Asher, supra, 1. c. 852 [16]; Restatement, Trusts 2d, § 172, p. 376; Bogert, Trusts & Trustees (second edition), § 963, p. 18; Scott on Trusts (second edition), § 173, p. 1293; Bennett v. Weber, 323 Ill. 283, 154 N.E. 105, 110 [13]; Wood v. Honeyman, 178 Or. 484, 169 P.2d 131, 162–163, 171 A.L.R. 587 [15, 16]. "Where a trust is created for several beneficiaries, each of them is entitled to information as to the trust. Where the trust is created in favor of successive beneficiaries, a beneficiary who has a future interest under the trust, as well as a beneficiary who is presently entitled to receive income, is entitled to such information, whether his interest is vested or contingent." Scott on Trusts, (second edition), § 173, p. 1294; Restatement, Trusts 2d, § 172, p. 377, comment c; Wood v. Honeyman, supra. A trustee is under a duty to account, even though he is a life tenant with power to consume capital for his support. Griffith Estate, 84 Pa.Dist. & Co.R., 424, 428.[1] In Griffith Estate the executor of the trustee's estate was required to file an accounting.

---

1. See also: Scott on Trusts (second edition), § 172, p. 1291 and reference to In Matter of Crane, Sup., 34 N.Y.S.2d 9 (1942), aff'd sub. nom., 266 App.Div. 726, 41 N.Y.S.2d 40, wherein it was held that the written acceptance of the income beneficiary of a trust of the correctness of an account did not bind the beneficiaries entitled in remainder.

"* * * It lies within the discretion of the court * * * to order an account of the trustee or his successor in interest, at the suit of any interested party * * *. In order to succeed in such a suit for accounting, it is not necessary that the beneficiary allege that there is any sum immediately due him under the trust, or that the trustee is in default. The suit is one to obtain information concerning the course of administration, no matter what the current status of the trust should be." Bogert, Trusts and Trustees (second edition) § 963, pp. 20–21. "* * * Whenever a trust relation between the parties is shown to exist, the right to an accounting * * * follows as a matter of course." Garrett v. First Nat'l Bank & Trust Co., 153 F.2d 289, 292 [10]. (CCA, 5th Circuit). "* * * It is well settled that when a fiduciary relation is shown to exist, and property or property interests have been intrusted to an agent or trustee, the burden is thrown upon such agent intrusted to render an account, and to show that all his trust duties have been fully performed, and the manner in which they have been performed. It is assumed that the agent or trustee has means of knowing, and does know, what the principal or cestui que trust, cannot know, and is bound to reveal the entire truth * * *. It is not necessary in a case such as this that the plaintiff should show that there will be something found due to her on the accounting. That fact can never be known with certainty until the account has been taken. The right to this accounting results from the facts that the fiduciary relation has been created and assumed by the agent or trustee, and that the principal or cestui que trust is not informed, and does not know, what has been done with reference to the property or property interests confided to the agent or trustee." Frethey v. Durant, 24 App.Div. 58, 48 N.Y.S. 839; Bogert, Trusts and Trustees, (second edition), § 962, p. 18.

The burden of accounting and what it entails[2] is aptly expressed in Wood v. Honeyman, 178 Or. 484, 169 P.2d 131, 162 [13, 14]:

"It must be apparent that when one becomes a trustee and thus undertakes to administer an estate for the benefit of another, he must maintain records of his transactions so complete and accurate that he can show by them his faithfulness to his trust. It is not enough for him to know that he is honestly performing his duty. Since, generally, the burden of proof rests upon him to prove his fidelity, he must be able to sustain his position by honest records. Bogert on Trust and Trustees, § 962, says:

" 'It is the duty of the trustee to keep full, accurate, and orderly records of the status of the trust administration and of all acts thereunder. * * * "The general rule of law applicable to a trustee burdens him with the duty of showing that the account which he renders and the expenditures which he claims to have made were correct, just and necessary. * * * He is bound to keep clear and accurate accounts, and if he does not the presumptions are all against him, obscurities and doubts being resolved adversely to him." * * * A plan should be employed which will show items of principal and their investment at the beginning of the trust, and all later additions or subtractions therefrom and changes of investment, as well as a separate set of entries to record income received and paid out. * * * For each cestui it is advantageous to have a separate record of sums due and amounts paid him by the trustee.'

"The 'plan' suggested by those words is so logical and simple that any trustee who means to perform his duty would embrace the plan, whether required by law to do so or not. * * * The section from which we have been quoting continues:

2. As to what an accounting should include, see: Scott on Trusts (second edition),

§ 172, p. 1287; Bogert, Trusts and Trustees (second edition), § 962, pp. 10–15.

" 'The principal penalty usually stated to apply to a trustee who fails to keep proper records of his trust is that "all presumptions are against him" on his accounting, or that "all doubts on the accounting are resolved against him." He has the burden of showing on the accounting how much principal and income he has received and from whom, how much disbursed and to whom, and what is on hand at the time.' "

We do not agree with defendant's contention that for plaintiffs to be entitled to an accounting by the executor of the estate of Carl Holekamp, Sr., they are required to show that a fiduciary relationship exists between them and defendant. A fiduciary relationship between plaintiffs and Carl Holekamp, Sr., as trustee, has been established and defendant, as executor of his father's estate, stands in the shoes of this trustee insofar as the duty and obligation to render an account is concerned. It is the personal representative only who would have the right to possess, use and control the records of his decedent which would include, in the circumstances of this case, any records of his decedent as a trustee. He is the only one who can render an account for his decedent. The death of a trustee without accounting to all beneficiaries should not, and does not, deprive them of that right, and those who have the right of control of records the trustee is required to keep have the duty and obligation to render an account of the administration of the trust. This right does not depend upon proof by the beneficiaries that a balance remains in the trust estate, for this fact cannot be determined until an accounting is rendered; nor does it depend upon proof of maladministration. For cases from other jurisdictions where the personal representative of a deceased trustee has been held to account for his decedent's administration of a trust, see: Akin v. Warner, 318 Mass. 669, 63 N.E.2d 566; Markus v. Markus, 331 Mass. 394, 119 N. E.2d 415, 418; Alexander et al. v. Fidelity Trust Co., 249 F. 1 (CCA–3 Cir.).

Price v. Boyle, 287 Mo. 257, 229 S.W. 206, 208, cited by defendant, is a suit by the administrator of the estate of a deceased lifetime beneficiary of a trust against the executrix of the estate of the deceased trustee for an accounting. The trustee was a son of the beneficiary. The beneficiary died about four years before the trustee; the suit was filed five years after the death of the beneficiary. The trustee presented to his mother several statements of his accounts as trustee, but in the interim between her death and the institution of suit these and any other record evidence which would show whether or not he had accounted, and, if not, in what manner he had discharged his trust were destroyed by her daughter who would have been the principal beneficiary of the proceeds of the suit. Unlike the case at bar, laches was urged as a defense. This court applied that doctrine in denying an accounting. However, before reaching the point on which that decision turned, the court said that although the administrator of the deceased beneficiary's estate (had he been appointed immediately after her death) could have demanded of the trustee that he account in all particulars, yet " * * * *in order to maintain a suit it would have to be shown that [the trustee] had not accounted to his mother in her lifetime for all her property in his hands.*" (Emphasis supplied.) The effect of the emphasized words in that case is not applicable to the facts in this case. The facts in this case are that an account has not been rendered to these beneficiaries; in Price an account apparently was rendered to the sole beneficiary entitled to an accounting. An accounting for all property of the trust to their mother, the life beneficiary, would not dispense with the obligation to render a like account to these plaintiffs, secondary or remaindermen beneficiaries. While it may be that Carl, Sr., told one or both of the plaintiffs a year or so before his death that the trust was exhausted, this does not rise to the level of an accounting.

Benz v. Powell, 338 Mo. 1032, 93 S.W.2d 877, cited by defendant, was an action to follow or discover trust funds in the hands of the personal representative of a deceased trustee; it was not an action for an accounting, and is not applicable to the question of whether plaintiffs are entitled to an accounting.

■ Plaintiffs contend that Carl Holekamp, Sr., breached the trust by failing to keep proper records of its administration. Defendant contends there is no proof of such failure; that the mere fact that complete records were not found does not justify the conclusion they were not maintained. Although there is strong suspicion that proper records were not kept, we cannot and do not so find from this record. We understand from defendant's contention that records of the trust are temporarily or permanently lost. In Bogert, Trusts and Trustees, (second edition), § 962, p. 15, it is said that "If the trustee claims that he kept an account book but that he has lost it, * * * he must bear the burden of proving the payments which he alleges were shown by the book, and that doubts will be resolved against him." Also see: Akin v. Warner, 318 Mass. 669, 63 N.E.2d 566, 570. Loss of records does not absolve a trustee or his personal representative of the obligation and duty to render a full account to trust beneficiaries and he must bear the burden of proving what he claims the lost records would show. Any doubts should be resolved against him.

In Bennett v. Weber, 323 Ill. 283, 154 N.E. 105, 110 [11] the trustee contended that it would be difficult to prove items of expense and disbursement to his mother because he had not taken receipts from her. It was held in that case that " * * * Difficulty in making such proof does not, however, afford a reason why the rule of strict accountability by a trustee should be relaxed." Nor would we relax that rule because of the seeming difficulty in this case. This record indicates that it is probable that an accounting can be rendered.

It is inconceivable that a substantial account of the yearly financial condition of the trust (from beginning to end) should be beyond the ability of an accountant to reconstruct.

■ Part of the difficulty in plaintiffs' attempt to develop or reach an accounting, after defendant had refused, lay in the trial court's refusal to permit plaintiffs to show the identity of the items constituting the beginning corpus of the trust. The inventory and final settlement of the executor and the receipt of the trustees showed merely: $49,960. Whether that amount consisted of cash, notes, stocks, bonds, or real estate, or all, is not disclosed. The court sustained objections of defendant to this evidence on the theory that plaintiffs could not go back of the final settlement and an order discharging the executor; that the inventory and settlement " * * * would have no probative value in showing the identity of the assets of the trust * * * ", because they do not identify the assets represented by $49,960. But the question is not whether plaintiffs could go back of the final settlement and discharge of the executor; the question is whether plaintiffs are entitled to know the identity of items of property constituting the corpus of the trust at the time it was delivered to the trustees. An accounting necessarily requires a full disclosure and description of each item of property constituting the corpus of the trust at its inception. This record indicates it was not all cash and may have consisted also of promissory notes and real estate, or the proceeds of either or both. Defendant having refused to render an account of the trust, plaintiffs were entitled to make this inquiry and, if necessary to that purpose, to trace any known assets from the beginning of the probate estate through administration to the executor's final settlement to determine the character of trust assets delivered to the trustees.

■ On the accounting to be rendered credit should be given for all sums prop-

erly paid to the life beneficiary from trust funds in accord with the terms of the trust instrument, and with all sums properly paid or advanced to her by Carl Holekamp, Sr., from his own funds in accord with the terms of the trust instrument. Bogert, Trusts and Trustees, (second edition) § 972, p. 218.

■ The second facet of plaintiffs' case was their attempt to show breaches of trust by Carl Holekamp, Sr. Plaintiffs contend that they have shown that this trustee commingled trust funds with his own funds and property. This contention is based primarily on evidence that a trust bank account was closed early in January, 1925, that there is no record of another or subsequent trust bank account, and that after that date monthly payments made to Amalie were by checks drawn on a personal account of Carl, Sr., or on his "special" account. This record, at most, produces a suspicion of commingling, but the evidence is insufficient to establish a breach of trust by Carl, Sr. Nothing here stated is intended to reflect upon the honesty or fidelity or good faith of Amalie Engelsmann or Carl Holekamp, Sr., or his personal representative. The sum and substance of this opinion is that the interests of these beneficiaries entitle them to an accounting, and a hearing thereon should they except thereto. Whether further proceedings thereafter will be necessary cannot be ascertained until an account is rendered and determined.

Plaintiffs contend that since they proved Carl Holekamp, Sr., commingled trust funds with his own and that defendant refused to render an account they are entitled to judgment for the value of the trust together with interest. We have held that the evidence does not establish commingling. Their evidence as to the value of the trust consists of a computation that begins with $49,960 in May, 1919, to which they have added 6% interest and deducted claimed payments to Mrs. Engelsmann. They say this computation produces a balance in May, 1964, of $90,287.14, for which they are entitled to judgment. This is the same type of hypothetical computation submitted by defendants as proof of exhaustion of the trust to which plaintiffs object. This evidence has no probative effect; it is not substantial evidence on which judgment for plaintiffs could be entered.

■ Plaintiffs contend that the court erred in refusing to admit in evidence Exhibits GG to JJ identified by their witness, Newell Ferry (an attorney and husband of one of the plaintiffs), as being documents given him by a former attorney for defendant at a meeting held before this suit was filed. This meeting was attended by the witness, his wife, defendant and his attorney. Witness Ferry testified that the meeting was held to discuss, and that they did discuss the items constituting the trust; that defendant looked at these documents and handed them to his attorney who then gave them to witness in defendant's presence. In his offer of proof, counsel for plaintiffs stated these exhibits would show a description of the several items constituting assets of the trust (including cash, notes, stocks and bonds) at the beginning date of the trust and on several dates thereafter. These documents were furnished the witness with defendant's permission and approval and should have been received in evidence. The court erred in excluding them. Gibson v. Metropolitan Life Insurance Co., Mo. App., 147 S.W.2d 193, 196–197 [1–3].

The decree is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

All concur.