Truman N. YOUNG and Edith A. Young, His Wife, and Albert L. Onyika and Jayne M. Onyika, His Wife, and Truman Anderson and Mrs. Truman Anderson, His Wife, and J. Robert Migneron and Alma Migneron, His Wife, and Frank L. Weber and Marie Weber, His Wife, Plaintiffs-Appellants,

v.

LUCAS CONSTRUCTION COMPANY, a Corporation and Thelma Lucas, Defendants-Respondents.

No. 33603.

St. Louis Court of Appeals, Missouri.

April 28, 1970.

Sheehan & Brown, Arnold, for plaintiffs-appellants.

Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendants-respondents.

SMITH, Commissioner.

This appeal arises from the action of the trial court in granting motions to dismiss plaintiffs' amended petition without leave to amend. Plaintiffs are owners of various lots in Valle Lake Subdivisions One, Two and Three in Jefferson County, a lake and recreation development. Defendant Lucas Construction Company (hereinafter Lucas or defendant) was the owner and developer of these subdivisions. Thelma Lucas is not identified in the petition, no allegations refer to her, no relief is sought against her and no reference has been made to her in the briefs filed here. The trial court's action in granting her motion to dismiss was proper, and any claim to the contrary by plaintiffs has been abandoned.

Plaintiffs sought to bring this action in their individual capacities and as representatives of the property owners in the three subdivisions to require defendant to call for an election of trustees, to account for funds received and expended by defendant from a maintenance fund and for judgment in favor of the trustees for any amount the court finds against defendant. The maintenance fund resulted from assessments of the property owners of the subdivisions, which assessments were authorized by recorded restrictions governing the subdivisions. The amended petition alleged that by virtue of the restrictions defendant was "a trustee by operation of law in their (sic) fiduciary capacity in the collection of assessments up to ninety cents per front foot of lots within said subdivisions." It then alleged that defendant had collected assessments, that demand had been made upon it for an accounting of the funds collected, that defendant had failed and refused to account.

The original petition was filed September 3, 1968, the amended petition on April 26, 1969. The original petition and amended petition differ only as to the class action allegations. Defendants filed a motion to dismiss the original petition and on May 20, 1969, filed the motion to dismiss the amended petition which was granted on June 9, 1969. By letter of April 15, 1969, Lucas notified the lot owners of its intention to exercise an option to convey contained in the restrictions. Trustees were elected in accord with that conveyance provision and on June 5, 1969, defendant quitclaimed to the trustees all its right, title and interest in and to the parkways, walkways, lots, water systems and improvements and all or any rights (except as a lot owner) it might have in the subdivision.

The restrictions were not attached to either the original or amended petition although they were referred to in both. Following argument of the motion to dismiss the original petition, defendant filed a memorandum in support of the motion to which was attached the restrictions. The

memorandum stated: "Plaintiffs do not attach a copy of the restrictions to their petition, but we furnish a copy herewith in order that the Court may fully consider this matter * * *" Both memorandum and restrictions are included in the transcript, approved by attorneys for both parties. The briefs of both parties refer to provisions of the restrictions not set out in the amended petitions. It is apparent that the parties and the court treated the restrictions in full as before the trial court in determining the sufficiency of plaintiffs' petition, and we will also consider them. Five paragraphs of the restrictions are of concern here:

" '12. As a part of the consideration for the sale of this lot, the Corporation shall have the right to assess the owner of this lot after June 30, 1957, and each succeeding June 30th thereafter such sum as the Corporation shall deem necessary for the upkeep and maintenance of the dam, roads, and other improvements, provided, however, that no assessment for any one year shall exceed the sum of ninety cents ($.90) per front foot, and further provided that the assessment as levied each year shall be and become a lien without filing of suit or legal procedure to establish such lien on said lot if not paid within thirty days after June 30th of the year in which the assessment is made.

\* \* \* \* \* \*

'14. Title to parkways, walkways, roadways, dam and water system shall be and remain in the Corporation, subject to the easements and appurtenances in the owners of the lots in said subdivision.

'15. When the Corporation shall have disposed of all its lots in said subdivision, or after the expiration of five years from the date hereof, the Corporation may, at its option, convey, release and quit-claim, to three Trustees, who shall be lot owners, to be elected by all of the then lot owners of the subdivision, the owner or owners of each lot to have one vote in such election, all its right, title and interest in and to the said parkways, walkways, roads, water system, and improvements, and all or any rights it may have in said subdivision, excepting as a lot owner, if it then has lots. The Corporation shall give 30 days notice in writing to all of the then lot owners notifying them of its exercise of its option to convey to said Trustees, and notifying them of such election. If for any reason Trustees are not elected by the lot owners, the Circuit Court may appoint the Trustees from among said lot owners on application of the Corporation. Such Trustees, elected or appointed, shall serve for five years, when another election shall be held. They may be reelected. Conveyance to such Trustees for the benefit of all the lot owners of said subdivision shall deprive said Corporation of its rights hereunder and shall release the Corporation of all its duties, obligations, and responsibilities hereunder. But it shall not affect the restrictive covenants herein entered into and running with said land, nor the enforcement thereof.

'16. The Corporation shall have the right to charge a management fee of five percent of the sums expended from the Maintenance Fund so long as it shall have charge of the collection and disbursement thereof. If the employment of an attorney shall become necessary for the interpretation, or enforcement of the restrictions, or to protect the interest of the lot owners, or to defend this agreement, disbursement from the maintenance fund for his services shall be proper.

\* \* \* \* \* \*

'21. The Corporation, successor Trustees, or any person having any right, title, or interest in or to any lot in said subdivision shall have the right to take action to enforce these restrictions by any lawful means and in any lawful manner.' "

Lucas filed a motion to dismiss the appeal as moot. This is based upon the contention that the election of trustees and execution of the quit-claim deed disposes of all relief sought by the amended petition. We think not.

Plaintiffs sought the election of trustees or in default of that, appointment of trustees by the court. That relief is no longer necessary as trustees have been elected. That portion of plaintiffs' petition is moot. State ex rel. Weber v. Vossbrink, Mo.App., 333 S.W.2d 298. But plaintiffs also sought an accounting and a money judgment of any amount found owing in favor of the trustees and against Lucas. If plaintiffs are entitled to seek an accounting, and if defendant must account, the right to an accounting and the obligation to account does not end because defendant has by its own act ceased being a trustee or fiduciary. Engelsmann v. Holekamp, Mo., 402 S.W.2d 382; Civic League of St. Louis v. City of St. Louis, Mo., 223 S.W. 891. The obligation of a fiduciary is not to be so lightly shed, nor are the protections to the cestui que so fragile that they may be destroyed by this unilateral action of the trustee.

Nor does the fact that the newly-elected trustees are not parties make the relief sought of an accounting impossible of accomplishment. Rule 52.06, V.A.M.R. provides that parties may be dropped or added by order of the court on motion of any party or of its own initiative *at any stage of the action.* At the time this suit was originally filed there were no elected trustees who could be made parties and when the amended petition was filed that was still true. The elected trustees can be added after remand. No event has occurred which makes a decision of defendant's obligation to account unnecessary. The motion to dismiss for mootness is denied.

We turn to the merits of the appeal. The trial court gave no reasons for granting the motion to dismiss and the motion contained only the general ground of failure to state a cause of action. If the facts pleaded, and the reasonable inferences to be drawn therefrom, looked at most favorably from plaintiffs' standpoint, show any ground for relief then the amended petition should not have been dismissed.

It is well established that an action for an accounting does not lie in the absence of some ground of equitable jurisdiction. But that rule does not apply where a fiduciary relationship is established. Engelsmann v. Holekamp, Mo., 402 S.W.2d 382 [3, 4]. The real question here is whether the petition and restrictions would support a factual conclusion that Lucas occupied a fiduciary capacity in respect to the maintenance fund. We hold they do. The provisions of paragraph 12 authorize the assessment "for the upkeep and maintenance of the dams, roads, and other improvements." Title to those areas was to remain in the Corporation subject to the easements and appurtenances in the owners of the lots in the subdivision. The defendant, at its option, could convey its interest in these areas to "three Trustees" for the benefit of the lot owners. The defendant was limited to charging five per cent of the sums expended from the maintenance fund as its management fee.

The existence of a fiduciary relationship is a question of fact. Liddell v. Lee, Mo., 159 S.W.2d 769, 772; State ex rel. to Use of Community Heating and Air Conditioning Co., Inc. v. Schwartz, Mo.App., 452 S.W.2d 243. Courts of equity have consistently refused to set bounds to the circumstances out of which a fiduciary relationship may spring. Here, under the restrictions, Lucas was entitled to collect from the lot owners an amount of money determined by Lucas (with an upper limit), for an express and limited purpose (the maintenance and upkeep of areas used commonly by all lot owners) and which fund Lucas could

charge only five per cent of the amount expended as a fee. The lands to be maintained were, after Lucas had sold all the lots or at the expiration of five years, at Lucas' option, to be conveyed to *trustees* for the benefit of the lot owners. And particularly significant is the language in paragraph 21: "The Corporation, *successor* Trustees * * *"

Lucas receives the money of the lot owners to be expended solely for purposes of benefit to the lot owners as a whole. The amount to be charged, the persons to be paid to maintain and keep up the common property, the amount to be expended for any particular portion of the upkeep and maintenance are matters within the discretion and control of Lucas, and not within the control of those providing the money.

It is obvious, that as to the maintenance fund, the lot owners necessarily were required to repose confidence and trust in Lucas and that in carrying out its functions under the restrictions Lucas was required to exercise fairness and good faith. These are the hallmarks of a fiduciary relationship. State ex rel. to Use of Community Heating and Air Conditioning Co., Inc. v. Schwartz, *supra.*

■ Nor are we impressed with defendant's argument that the words in paragraph 12, "As a part of the consideration for the sale of this lot, the Corporation shall have the right to assess * * *" establishes the relationship as buyer and seller only. The right to assess may arise from the sale, but the restrictions imposed on the use of the money constitutes the seller a fiduciary in regard to the money collected by assessment.

In Engelsmann v. Holekamp, Mo., 402 S.W.2d 382, 1 c. 389 [7–11], the obligation or duty to account was set forth as follows:

" * * * ʹ* * * Whenever a trust relation between the parties is shown to exist, the right to an accounting * * *

follows as a matter of course [citations]. * * * It is well settled that when a fiduciary relation is shown to exist, and property or property interests have been intrusted to an agent or trustee, the burden is thrown upon such agent intrusted to render an account, and to show that all his trust duties have been fully performed, and the manner in which they have been performed. * *ʹ"

■ Plaintiffs pleaded a fiduciary relationship, and the restrictions support such allegations. The duty to account arises from the relationship. Plaintiffs bear the burden of establishing the fiduciary relationship and the failure of defendant to account. They have alleged the fiduciary relationship which finds support in the restrictions. They have alleged the collection of moneys by defendant in its fiduciary capacity and the failure or refusal to account to the lot owners. The petition states a cause of action.

■ Defendant attacks the petition as inadequately pleading the elements necessary to establish a class action. We need not determine the adequacy of these allegations. Plaintiffs state they bring the action "individually" and as representatives of the class. As beneficiaries of the fiduciary relationship they have the right to seek an accounting in their own right. Engelsmann v. Holekamp, *supra*, [5, 6]; Oestereich v. Schneider, Mo.App., 187 S.W.2d 756 [7]. It is unnecessary that they bring the action as a class action to obtain the accounting relief they seek. Furthermore, the restrictions specifically provide that "any person having any right, title, or interest in or to any lot in said subdivision shall have the right to take action to enforce these restrictions by any lawful means and in any lawful manner." Plaintiffs have alleged their interest in lots in the subdivision, and may bring this action as individual lot owners.

The plaintiffs' amended petition as to Lucas Construction Co. should not have been dismissed. Respondent's motion to

dismiss the appeal is denied; the order granting the motion to dismiss of Thelma Lucas is affirmed; the order granting the motion to dismiss of Lucas Construction Co. is reversed and the cause is remanded.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court.

Accordingly, respondent's motion to dismiss the appeal is denied; the order granting the motion to dismiss of Thelma Lucas is affirmed; the order granting the motion to dismiss of Lucas Construction Company is reversed and the cause is remanded.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.