Agnes A. ZELCH, a single person, and Gilbert Zelch, and Orville Zelch, and Wilmer W. Zelch, Plaintiffs-Appellants,

v.

Jeanine E. AHLEMEYER and Ellanora A. Duessel, and Ruth Westover, Defendants-Respondents.

No. 40507.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 6, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 16, 1980.

Application to Transfer Denied
Feb. 11, 1980.

Arthur E. Herder, Jr., St. Louis, for plaintiffs.

Robert C. Jones, Harold Tzinberg, Clayton, for defendants.

SMITH, Judge.

Plaintiffs appeal from a judgment entered against them in an equitable action tried by the court. Plaintiffs' petition sought to set aside a deed of trust on their farm land and notes secured thereby on the basis that they were given without consideration and were the product of undue influence. In addition plaintiffs sought an accounting. Defendants filed a counterclaim to recover the balance due on the notes. Judgment was entered for defendants on the counterclaim in the amount of $8610 principal and interest and that judgment ordered plaintiffs' equity of redemption in the property foreclosed to satisfy the judgment. Plaintiffs' petition was ordered dismissed with prejudice.

Agnes Zelch (the main plaintiff), is a widow, approximately 70 years old at the time of trial. She suffers from arteriosclerosis and heart problems of some lengthy

duration. In 1932 she and her husband, Emil, acquired a tract of land in St. Louis County containing approximately 15 acres. In 1962, the property was conveyed through a straw party to Agnes and her son Wilmer as joint tenants. In February, 1972, Agnes Zelch executed the deed of trust upon which the law suit is based to Jeanine Ahlemeyer as trustee for Ruth Westover. Jeanine Ahlemeyer is the daughter of Ellanora Duessel (the main defendant); Ruth Westover, who is either non-existent or was deceased before the transaction, is a straw party used by Mrs. Duessel. The three year note secured by the deed of trust was for $15,000. There were in addition three interest notes for $1050 payable at 12 month intervals. Subsequent to the execution of the deed of trust Wilmer Zelch and his wife executed a quit-claim deed granting to Agnes a life estate with power to sell, mortgage or convey the fee simple title during her life. Upon her death the remainder was to vest in Agnes' sons, Gilbert, Orville and Wilmer. The quit-claim deed was executed at the behest of Mrs. Duessel after she advised Wilmer of the notes and deed of trust. On July 22, 1975, Agnes Zelch by quit-claim deed conveyed the property to herself, Gilbert, Orville and Wilmer as joint tenants. Wilmer has since died.

In January 1972, at the request of Agnes Zelch, Mrs. Duessel, 74 at the time of trial, became actively involved in the handling of Agnes' assets. Mrs. Duessel testified that this request came because Agnes did not trust her children. Agnes and Mrs. Duessel had known each other for approximately 25 years but had had no previous business dealings. From January 1972 until July 15, 1975, Mrs. Duessel had complete control of Agnes' bank and savings accounts.

Early in 1972 Agnes executed a power of attorney in favor of Mrs. Duessel. This was revoked on July 16, 1975. Throughout the three and one-half year period the bank books and records of Agnes' accounts were in the possession of Mrs. Duessel. The address to which statements and correspondence concerning the accounts were to be sent was Mrs. Duessel's address. At least one savings account, comprised solely of Agnes' money, was in the names of Agnes or Mrs. Duessel "or survivor." Although the various banking transactions are far from clear from the record, it is evident that prior to Mrs. Duessel's involvement Agnes had something over $6000 in a checking account in an Arnold bank. Over a period of time this account was closed out and the money moved through a series of banks and savings institutions. Throughout the period Mrs. Duessel signed deposit slips, withdrawal slips and endorsed checks for Agnes utilizing her power of attorney. As late as June 30, 1975, Mrs. Duessel withdrew $1000 from the joint savings account and in August 1975 (after termination of her position as "financial advisor" to Agnes) closed the account by withdrawing the remaining balance of $22.96. Mrs. Duessel made at least one investment for Agnes. Mrs. Duessel testified that all withdrawals from the accounts were made at Agnes' request and that the money was given to Agnes. On at least one occasion Agnes gave Mrs. Duessel a "bag" of money which Mrs. Duessel testified she deposited for Agnes although she did not know how much was deposited. No explanation was given for the use of a "survivor" account except that Agnes had requested it. The record and Mrs. Duessel's testimony are unclear about the uses made of Agnes' money, how much was withdrawn or deposited, for what it was spent, what was the source of funds, or any other details concerning the accounts through the three and one-half year period of Mrs. Duessel's stewardship. Mrs. Duessel denied having any records concerning Agnes' accounts or assets although she did maintain records of her own business dealings and had been a real estate broker with over 30 years experience, predominately in subdivision of farm property. Mrs. Duessel testified that on July 15, 1975, she returned all records in her possession to Agnes. On that date and at the same time she returned two savings account books and a corporate bond, the three having a total value of $8660. Agnes receipted for these three items but the receipt (prepared by Mrs. Duessel) is silent about any records.

On August 2, 1975 Mrs. Duessel wrote Agnes. Included in that letter were the following statements:

"Mrs. Zelch, I do have a record of every dime of your money which was turned over to me for handling. These papers do include the checks from Arnold Savings Bank at the time that account was closed . . . ..

"If you will sign the release enclosed [1] and have your son Wilmer to sign so that I may get my money I will turn over to you and Wilmer the papers that I have held for protection so I could prove, if necessary, what amount I had gotten from you . . . .."

The facts surrounding the deed of trust and notes are equally confused. Although the face amount of the principal note was $15,000 Mrs. Duessel testified that only $10,000 was actually provided to Agnes. The remainder was to be available as needed by Agnes. Mrs. Duessel testified that the purpose of the loan was to provide Agnes with "old age security." Mrs. Duessel testified that she had received payment on the principal of $3000 and two interest payments of $700 and $630. No records of such payments nor of the $10,000 payment were adduced. The two paid interest notes were retained by Mrs. Duessel. The deed of trust and notes were executed at Mrs. Duessel's home with no one present except her, Agnes, and the notary public. The notary was Mrs. Duessel's daughter. Considerable confusion is reflected also in the record concerning the consideration for the notes. Variously Mrs. Duessel indicated that Agnes had asked for and received nothing, that she received $10,000 in cash, that she received some cash and some unidentified notes and deeds of trust. Mrs. Duessel identified the source of the $10,000 alternately as a now deceased friend of Mrs. Duessel's named Ottenad, and both Mrs. Duessel and Ottenad. What was done with the money was also a source of confusion. On deposition Mrs. Duessel testified that

when she received the $10,000 cash from Ottenad she placed it in two accounts for Agnes. From the bank records before us it appears that the balance of those accounts never equalled $10,000 and these accounts also included some or all of Agnes' original assets. At trial, Mrs. Duessel testified that the notes and cash furnished by Ottenad and her were put into an envelope which was kept at Duessel's home and from which Agnes on two occasions took some unspecified amount of money. At the time she returned the two account books and the bond, Mrs. Duessel testified she also returned $47 left in the envelope, but she did not include that in the receipt.

Agnes Zelch also testified. It is apparent that her memory is seriously impaired and that she is unaware at the present of what occurred between 1972 and 1975. She can remember neither the year of her birth nor her age. Plaintiffs' evidence was that the memory problems had existed for a lengthy period of time. Plaintiffs adduced evidence that no records were returned to Agnes by Mrs. Duessel other than those referred to in the receipt and that Mrs. Duessel refused to discuss Agnes' financial matters with her family. This latter testimony was at least inferentially corroborated by Mrs. Duessel.

Plaintiffs also had evidence that Agnes received half of her husband's social security payments from him, that he paid all the bills, and that Agnes did not spend any money, she just "saved it."

The termination of Mrs. Duessel's relationship with Agnes occurred immediately after the death of Agnes' husband when her children sought information on her financial affairs from Mrs. Duessel in order to process a claim for veteran's benefits. Her refusal to supply the information and their belief (based upon what their mother had told them and one earlier inquiry by Mrs. Duessel) that Mrs. Duessel had prepared or had had prepared a will for Agnes led the family to seek legal counsel. At that time

1. This was a release so that Mrs. Duessel could receive payment for $2000 worth of Shell Oil stock allegedly purchased with her funds but erroneously issued by the stock broker to Agnes. This stock was sold by the Zelch's and the money retained by them, but Mrs. Duessel made no claim for this "conversion" in her counterclaim.

the power of attorney was revoked, a will was prepared, a deed was executed transferring the real estate to Agnes and her children, and the family (except possibly for Wilmer) first learned of the existence of the deed of trust. This suit followed.

The trial court made a fact finding that Mrs. Duessel occupied a fiduciary capacity with Agnes. We find that finding fully supported by the evidence. "Fiduciary capacity" is defined in Black's Law Dictionary, Fourth Edition, as follows:

"One is said to act in a 'fiduciary capacity' or to receive money or contract a debt in a 'fiduciary capacity,' when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part." See Jackson v. Tibbling, 310 S.W.2d 909 (Mo.1958) [8, 9–11]; Davis v. Pitti, 472 S.W.2d 382 (Mo.1971) [4, 5]; McKeehan v. Wittels, 508 S.W.2d 277 (Mo.App.1974) [1–3].

The admitted relationship between Agnes and Mrs. Duessel meets all the requirements of a fiduciary relationship.

From this fiduciary relationship spring certain legal consequences. Most important from our standpoint is the obligation of the fiduciary to account for his handling of the beneficiary's business. The rule in this state is set forth in Engelsmann v. Holekamp, 402 S.W.2d 382 (Mo.1966) (quoting from Frethey v. Durant, 24 App.Div. 58, 48 N.Y.S. 839 (1897)) as follows:

"It is well settled that when a fiduciary relation is shown to exist, and property or property interests have been intrusted to an agent or trustee, the burden is thrown upon such agent intrusted to render an account, and to show that all his trust duties have been fully performed, and the manner in which they have been performed. It is assumed that the agent or trustee has means of knowing and does know, what the principal or cestui que trust, cannot know, and is bound to reveal the entire truth." [7–11].

It is the obligation of the fiduciary to keep complete and accurate accounts or records and if he has not done so all doubts and obscurities are resolved against him. Loss or absence of records does not absolve the fiduciary of the obligation to render a full account and he bears the burden of proving what the lost or absent records would show. Engelsmann v. Holekamp, supra, [13, 14 and 19]. See Restatement of Agency 2d § 382.

Here it was the obligation and duty of Mrs. Duessel to account for her handling of Agnes Zelch's property. That duty is not satisfied by Mrs. Duessel's uncorroborated testimony that she turned over all records to Agnes. It is particularly obvious here that accurate and complete records of Agnes' accounts, assets and business transactions were required of Mrs. Duessel. Two specific transactions point this up. At least one substantial bank account was titled in such a way that it would have become the absolute property of Mrs. Duessel if Agnes had died first—a strong possibility in view of Agnes' health. Inasmuch as no contention of gift has been advanced by Mrs. Duessel and inasmuch as Mrs. Duessel had full control of the account through her power of attorney, it is difficult to envision a valid reason for establishing the account in this way unless it was to be additional security for the loan. Whatever the reason it is apparent from Mrs. Duessel's testimony that the account was not considered her property but solely the property of Agnes. It was therefore necessary that the records concerning this account be maintained so that proper accounting be made to the estate of Agnes in the event of her death. The same is obviously true of the deed of trust and notes. On their face they called for repayment of $15,000 plus $3150 interest although admittedly no more than $10,000 plus $1890 interest was owed. The interest notes, even though paid were retained by the lender in her possession as were the notes and cash which Mrs. Duessel testified formed the consideration. Whatever may be said of the wisdom of handling the loan

in this fashion, it is obvious that in the absence of accurate and complete records great injustice, approaching fraud, could occur upon the death of Mrs. Duessel.

Until an accounting has been made no resolution is possible of the validity of the deed of trust and notes which it secured. It is clear from the record, although little else is, that Agnes Zelch was possessed of bank accounts of a value of at least $6000 and possibly more when Mrs. Duessel first entered the picture. There is also some indication that Agnes had income, at least from social security, and that she had additional money, in an unknown amount, which Mrs. Duessel deposited for her. There is also evidence that she did not spend money of her own. Mrs. Duessel testified that she gave Agnes $10,000 or its equivalent, and was repaid $4330. She delivered assets worth $8600 to Agnes at the termination of her role as financial manager and attorney in fact for Agnes. In this posture without an accounting of Agnes' original assets, her other income, and the money expended for or given to her, it is impossible to tell whether Agnes received (1) any, or (2) adequate, or (3) the specified consideration for the notes and deed of trust. The amount of the consideration in turn is necessary to determine the issue of undue influence and what judgment should be made on the notes and deed of trust. The circumstances surrounding the execution of the deed of trust and the existence of a fiduciary relationship are sufficient to raise the presumption of undue influence and, contrary to the trial court's conclusion of law, place the burden upon defendants to refute the presumption. *Sullivan v. Winer*, 310 S.W.2d 917 (Mo.1958) [4, 5]; *Davis v. Pitti*, 472 S.W.2d 382 (Mo.1971) [7]; *Godsy v. Godsy*, 504 S.W.2d 209 (Mo.App.1973); *Drake v. Greener*, 523 S.W.2d 601 (Mo.App. 1975). Mere absence of consideration alone may not be sufficient to warrant relief of equitable cancellation, but when combined with a fiduciary relationship and even the slightest circumstance of fraud, duress, mistake or undue influence, equity will step in to prevent injustice. *Drake v. Greener, supra.* [2, 3]. If, however, full or partial consideration was received by Agnes for the notes, it would be inequitable to cancel the notes or to refuse to enforce them at least to the degree of the consideration received. In that circumstance, even if undue influence caused the execution of the notes, Agnes has received full or partial consideration for them and is not entitled to complete cancellation.

We find, therefore, that the trial court erred as a matter of law in not ordering an accounting by defendant Duessel in her fiduciary capacity. Such an accounting is required before resolution can be had of plaintiffs' other claims or defendants' counterclaim. *Engelsmann v. Holekamp, supra,* [22]. We need not, therefore, reach the issue of whether the trial court erred in its findings of fact that full consideration was given for the notes and deed of trust and that no undue influence was exerted. Such findings are premature until after the accounting.

The cause is reversed and remanded with directions to set aside the judgment heretofore entered and to order defendant Duessel to account to plaintiffs, and for further proceedings consistent with this opinion.

DOWD, P. J., and SATZ, J., concur.