**In re The ESTATE OF David
CONDREN, Sr.,**

**Steven CONDREN and Thomas
Condren, Appellants,**

**v.**

**John CONDREN and Barbara
Condren, Respondents.**

**No. 53568.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 2, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 7, 1988.

Leritz, Reinert & Duree, John L. Sullivan, Joyce E. York, St. Louis, for appellants.

Dulin King Parres McDowell & McDowell, James A. McDowell, St. Louis, for respondents.

SMITH, Judge.

Plaintiffs appeal from an order of the Probate Division of the Circuit Court denying them relief in a discovery of assets proceeding.

Plaintiffs are two of the five children of David R. Condren, Sr. (hereinafter David). Defendants are a son and daughter-in-law of David. In August 1984, David entered a nursing home. On October 1, 1984, he was adjudged incompetent and the Public Administrator was appointed as his Guardian and Conservator. This proceeding was filed on October 22, 1984. David's wife died in 1971. He retired in 1976 and began receiving Social Security benefits and a pension from the Pipefitter's Welfare Education Fund. He lived in a home on Glenwood in Crestwood and after his retirement was living alone. In January 1981, defendants and their son moved into the Glenwood home on the basis of a mutual agreement between them and David and with at least the implied endorsement of the other four children. Shortly thereafter defendants sold their home on Northmoor in University City, achieving a profit over their acquisition price of approximately $40,000.

After January 1981, the Pipefitter pension was deposited into a savings Account in the joint names of David and defendants. The total pension proceeds deposited in this account from January 1981 to August 1984 was in excess of $19000. Of that amount $13000 plus was transferred at various times into a checking account in David's name alone. There is no dispute that that $13000 was used solely by David and that amount is not in issue. The Social Security benefits were placed in a checking account in the name of David and defendant Barbara Condren. Approximately $26,700 in social security benefits was placed in this account between January 1981 and August 1984. Also placed in this account was approximately $49,000 of defendant John Condren's earnings, resulting in a commingling of David and John's money. From this amount Barbara Condren paid the family bills for the household. It was her practice to destroy all cancelled checks within a month or two of receiving them from the bank. It was stipulated by the parties that when David was adjudicated incompetent $33,177.56 of his pension and social security benefits had been expended by defendants.

Defendants' evidence attempted to account for this sum through five basic categories. Initially they testified to cash which they gave to David when he would run short of cash and the bank was closed. David ate out two or three times a day and his sudden shortage of cash would come with considerable frequency. Defendants estimated these cash outlays amounted to $6600 over the three and three-fourths year period.

Secondly, defendants testified that $5,380 represented David's share of the household expenses. This figure was again an estimate as no prescribed formula for determining his share was ever agreed to or established and neither the bills nor the checks were presented as evidence presumably because of Mrs. Condren's practice in regard to destroying such materials.

The third category consisted of improvements made to the Glenwood property. Some of these improvements occurred while David owned the property and some occurred after sale of the home to defendants. Defendants testified that David agreed to make these contributions to the home improvements. Some of the improvements were made in order that the home could more easily accommodate three generations of residents. The total of David's

share of these improvements was $8,346.05 of which $5,367 was specifically identified.

The fourth category was a credit for out of pocket expenses arising from the defendants' sale of their Northmoor property. This included expenses in fixing the home for resale, real estate commissions, moving expenses and capital gain taxes. Defendants testified that there was no agreement by David to reimburse them for these amounts but they felt a credit for such items was "fair." The total for these items was $15,082.31.

The final category was for $25 per day for providing David with care, companionship, love and affection. Defendants admitted that no agreement for such charge existed and presented no evidence of any discussion of such a charge between them and David. The amount of this credit is $33,000.

Plaintiffs also sought a declaration concerning a note executed by defendants to David at the time they purchased the Glenwood property from him. Certain of the established scheduled payments were not made when due. Defendants contend this occurred with David's approval so that the money could be utilized for improvements on the home and so defendants could meet certain tax obligations. Defendants acknowledge their obligation under the note and testified that the payments were simply deferred not excused. The only issue concerning the note now before us is whether defendants owe interest on the deferred payments.

The parties do not disagree that defendants were acting in a fiduciary capacity as to the funds of David. The relationship testified to establishes such a relationship. *Thompson v. Williams,* 671 S.W. 2d 442 (Mo.App.1984) [2, 3]. A fiduciary is obligated to keep complete and accurate records and he bears the burden of proving what any cost or absent records would show. *Zelch v. Ahlemeyer,* 592 S.W.2d 482 (Mo.App.1979) [1, 2]. Our scope of review is that mandated by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976) [1, 3].

Factually, this case presents a situation different from that usually found in fiduci-

ary accounting cases. The evidence does not show that David was either physically or mentally infirm during the period from January 1981 through August 1984. It does demonstrate that he was a generous man with his money particularly where it concerned his children. This was a pattern that pre-dated 1981 and it is reasonable to conclude that David's handling and treatment of money was cavalier. This case does not involve a situation where the fiduciary is managing the affairs of another because of the inability physically or mentally of the other to do so. Here the parties constituted a family living together and voluntarily pooling their money for operation of the household. It is reasonable to conclude from the evidence that David wanted to contribute to this arrangement and did not wish to be bothered with the specific details of payments made. It is within this framework that the adequacy of defendants' accounting must be judged. That determination must in turn be made on the basis of the degree to which David expected defendants to account for their expenditure of his funds.

It is not uncommon for persons, related or not, to live in the same accommodations and pool their resources to meet living expenses and make improvements of those accommodations. It is also not uncommon that one member of the group assumes responsibility for paying the financial obligations of the unit. Many, if not most, marriages function in that fashion. Where such arrangements exist, and where all the parties are competent, the level of accounting expected is, or should be, established at the commencement of the relationship and unless thereafter modified should establish the accountability of the financial manager. So long as the pooled proceeds are utilized for agreed upon purposes, the financial manager, i.e. fiduciary, should not be called upon to make a more detailed accounting after the fact than the parties agreed to, expressly or by implication, when the expenditures were being made. Such arrangements tend to be informal and to impose upon them strict principles of fiduciary accounting is to contravene the way

in which people function and can serve as a trap to otherwise honest and conscientious conduct. Of course, if fraud or over-reaching is proven, stricter accountability exists. Plaintiffs do not contend, and have not proven, either fraud or overreaching existed.

■ As to the first three categories of expenditures we are unable to conclude that the trial court's implicit finding allowing these credits is erroneous. The evidence allows a finding that David agreed to contribute his money to a common commingled account for household expenses and improvements on the mutually shared premises. This was done without any requirement of accounting and without agreement or requirement that precision in allocating the cost be made. Both defendants and David, on the record before us, contributed to these expenditures. Under these facts, and in view of the family arrangement, we hold the trial court could find that no specific accounting for the first three categories was expected or intended by David and the estimates made by defendants were sufficient to satisfy their obligation to account to David. We are unable to conclude that the strict rules of accounting found in the cases should have applicability to this family expense sharing arrangement.

■ As to the fourth category a different result ensues. There was no agreement between defendants and David for him to reimburse them for their expenses incurred in making the move. Charging David for those items was a unilateral decision of defendants beyond the scope of the agreement. Defendants profited substantially from the sale of their home on Northmoor but seek to increase that profit even more by imposing the expenses on David. Utilization of his funds for that purpose is beyond the scope of the agreement between the parties and was unjustified. The trial court erred to the degree it allowed the fourth category as an offset in defendants' accounting.

■ The fifth category requires little discussion. Services rendered by a family member to another family member living in the same household are presumed to be gratuitous. *Trantham v. Gullic*, 201 S.W. 2d 522 (Mo.App.1947) [1]; *Vosburg v. Smith*, 272 S.W.2d 297 (Mo.App.1954) [1–6]. To overcome the presumption the burden is upon the claimant to establish that a contract, express or implied, or a mutual understanding at the time of the rendition of the services, existed that such services would be paid for. *Trantham v. Gullic, supra*, [2]. The evidence here establishes no such contract or understanding. In fact, defendant wife testified that they had no intention of charging David for whatever services they rendered. The defendants are entitled to no allowance for the fifth category.

The stipulated amount of David's fund for which an accounting was required was $33,177.56. Defendants have sufficiently accounted for $6600 in category one, $5380 in category two, and $8346 in category three or a total of $20,326. They have failed to account for $12,851.56. Under Sec. 473.340(3) RSMo 1986, the court should have entered a money judgment for $12,851.56 plus interest from October 1, 1984, in favor of the conservator of David Condren, Sr.

■ We turn to the promissory note. It contained a provision that in the event of default in payment of a monthly installment the signers would pay interest during the period of delinquency. It also contained a provision that the holder may " ... rearrange, adjust and extend the times and amounts of payments of interest on (sic) principal of this Note by agreement with the present or subsequent owner of the real estate securing the same...." There was evidence that David authorized the deferring of payments of the note without any request for payment of interest on the deferrals. That authorization meant that the non-payment was not a default because the payment was deferred by David. There was also evidence that David and his wife had made loans to their other children to help in the purchase of homes without any provision for interest or any schedule for repayment. Given this history and the evidence concerning deferral we

are unable to conclude that the trial court erred as a matter of law in determining that no additional debt for interest existed.

Defendants' motion for damages for frivolous appeal is denied.

The cause is reversed and remanded for entry of further orders in accord with this opinion.

KAROHL, P.J., and KELLY, J., concur.