**Frank O. PAZDERNIK, et al., Plaintiffs–Appellants,**

v.

**Frances STEMLER, et al., Defendants–Respondents.**

No. 57656.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 18, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 7, 1991.

John L. Sullivan, Edward M. Roth, St. Louis, for plaintiffs-appellants.

Alfred J. Rathert, Fenton, for defendants-respondents.

PUDLOWSKI, Presiding Judge.

This is an appeal from an order of the Circuit Court of the City of St. Louis entered on October 16, 1989. This order with findings of fact and conclusions of law dismissed the remaindermen-appellant's [1] amended petition for accounting, declaratory judgment, imposition of constructive trust, setting aside of real estate and personal surcharge and found for the respondent-trustee.

On May 22, 1967, Joseph F. Pazdernik, Sr. (Testator) executed his last will and testament. On April 27, 1970, Testator died and his will was admitted to probate in the Probate Division of the Circuit Court of St. Louis City, Estate No. 147949. Under his will Testator created a trust to be administered by his sister, respondent Frances Stemler (Mrs. Stemler–Trustee) [2] for

---

1. The remaindermen-appellant's bringing this action are (1) Frank O. Pazdernik, Jr., (2) Marie Tikuart, (3) Frances Matejka, (4) Christine Sitner, (5) Edward J. Schroeder, and (6) Joseph A. Pazdernik, who are nieces and nephews of Jo-

seph F. Pazdernik, Jr. (Testator). Other remaindermen did not join this suit.

2. Under decedent's will trustee's husband, Ray Stemler, was also named as co-trustee. On May

decedent's son, Joseph F. Pazdernik, Jr. (Joey), suffering from Down's Syndrome, to be used in providing for his care and well-being during Joey's lifetime. Decedent's will provides in pertinent part:

ITEM THREE: All the rest, residue and remainder of my estate, whether real, personal or mixed, I give, devise and bequeath to my sister FRANCES STEMLER and her husband RAY STEMLER as trustees without bond, in trust, nevertheless, for the following uses and purposes to wit:

A. My trustees are authorized and empowered to invest and reinvest the said trust estate in investments, assets or property of any and every kind, including, but not limited to real property, securities of all kinds, including stocks both common and preferred, notes, indentures, mutual funds, bank and savings and loan association accounts, governmental and institutional bonds, mortgages, pledges and deeds of trust.

B. After the payment of necessary expenses of the trust, including any expenses incurred by my said sister and brother-in-law in their duties as trustees hereunder, the income from the trust estate shall be used and expended for the use and benefit of my son JOSEPH F. PAZDERNIK, JR. during his lifetime. In this connection my said trustees *are authorized to pay all expenses for the care and maintenance of my said son in any institution of their choice, including the St. Joseph's Hill Infirmary, Eureka, Missouri, for which I hereby express a preference.* Any income derived from the trust in excess of the sum necessary for *such direct care and maintenance of my said son may be expended by my trustees in any other way which will provide for the welfare, enjoyment and well being of my said son or may be permitted to accumulate*

*as part of the corpus of the trust, in the discretion of my trustees.*

C. I declare that I am presently the owner of certain real estate located at 5814 Itaska Avenue, in the City of St. Louis, Missouri. *If, in the discretion of my trustee, it shall be in the best interest of the trust that said property be sold and the proceeds invested, they are hereby given the power and authority to so do.* If, on the other hand, it shall appear to them that retaining ownership of said real estate for the purpose of permitting my sister to live in or make visits to said property, my trustees are authorized to retain ownership of the same and expend such sums as may be necessary for the maintenance, including taxes, insurance and repairs, of said property during my son's life time. In the latter event and for said purposes my said trustees are authorized to live in said premises without the payment of rent, if they so desire. (Emphasis added).

In addition, the will stated that the trust would terminate upon the death of Joey with the remainder of the trust corpus to be equally divided among (a) Testator's living brothers and sisters;[3] and (b) the children of Testator's two deceased brothers.[4]

The management of the cash receipts and disbursements of the trust for Joey were administered through the probate court from April 27, 1970, the date of decedent's death until January 16, 1975 when the probate estate was distributed. The record demonstrates that from 1970 through 1974 $25,290.15 was expended for the care and maintenance of Joey at St. Joseph's Hill Infirmary (St. Joseph's). During this same time period, trustee provided clothing, travel, food and entertainment for Joey in addition to paying the maintenance, including taxes, insurance, and repairs on the Itaska property. Trustee paid these expenses with her personal

14, 1979, Mr. Stemler died and he has not been named in this action.

**3.** Frank Pazdernik, Sr., Rudolph Pazdernik, Sr., Stella Mraz, Frances Stemler and Anna Schroeder.

**4.** John Pazdernik, Sr. and William Pazdernik.

funds and not from the trust estate as authorized by decedent's will.

On January 16, 1975, at the time the estate was closed, the trust assets included 1138 shares of AT & T stock, $599.50 cash, and the decedent's residence located at 5814 Itaska. On April 4, 1975, Mrs. Stemler conveyed by general warranty deed the Itaska property to her daughter, Mildred Entchelmeyer Lakin (Lakin). Mrs. Stemler paid the trust estate $23,112.75 for the Itaska property. Subsequently, on May 24, 1976, Lakin reconveyed the property to both herself and Mrs. Stemler as tenants in common. Lakin testified that no consideration was given for the second transfer and was done only because it was thought to be better to have two names on the deed rather than one.

It is acknowledged that the amount paid ($23,112.75 by Mrs. Stemler) was the fair market value. Under the terms of the will she could have remained in the premises and the costs of maintenance, including taxes, insurance and repairs would have been borne by the estate. By purchasing the property, Mrs. Stemler relieved the estate from the burden of paying these expenses. Thus, the Trustee's decision to purchase the property had the effect of preserving the estate's assets for the care of the Testator's beneficiary, Joey. Notwithstanding these efforts, the estate assets were exhausted in 1981. Thereafter, the State of Missouri paid the costs of Joey's institutional care, but Mrs. Stemler continued to bring Joey to the home on Itaska Avenue. She also paid for Joey's clothing, travel, food and entertainment expenses until Joey's death on October 13, 1987.

On August 15, 1988, appellants filed an amended petition for accounting, declaratory judgment, imposition of a constructive trust, setting aside sale of real estate and personal surcharge. Appellants' petition alleged, *inter alia,* that Mrs. Stemler failed to adequately account for the assets of the trust from the date of the funding of the trust to the date of death of Joey, a period of over twelve years. Appellants' petition alleged further that Mrs. Stemler had breached her duty of loyalty by her purchase of the Itaska property from the trust estate.

Appellants prayed the court order Mrs. Stemler to accurately account for the income and expenditures of the trust estate, to set aside the sale of the Itaska property and that Mrs. Stemler be surcharged for the portion of trust assets for which she could not account. Appellants further asked the court to distribute this surcharge among the remaindermen in accordance with the terms of the trust and that their attorney's fees be paid out of the trust.

Appellants presented two exhibits detailing the income and expenditures of the trust estate. Both exhibits were admitted without dispute. Exhibit "3" is a statement of the cash disbursements paid by the Trustee for the period beginning April 1970 and ending August 1974 (the time period from the opening of the probate estate until the distribution of the estate assets). The total cash expenditures during this time period totaled $25,290.15 and were made exclusively to St. Joseph's Hill Infirmary. Exhibit "4" is a statement of the cash receipts and disbursements for the period beginning January 16, 1975 and ending December 31, 1987. Total excess cash receipts over disbursements during this time period were $40,643.62. However, both parties have stipulated that the actual excess of receipts was $39,153.47. Lakin, the daughter of the Trustee (who was 90 years old at the time of trial) explained that the $39,153.47 had in fact all been spent on Joey. Lakin testified that her mother spent approximately $50 per month on Joey's clothing, $35 per month on toys, $45 per month on personal items, and spent additional sums on traveling between St. Louis and St. Joseph's Infirmary in Eureka, Missouri. Mrs. Stemler also treated Joey to outings and other special events, including trips to the zoo, Grant's Farm, and meals at restaurants. Mrs. Stemler did not keep records of these expenditures. Nonetheless, it is reasonable to conclude she spent at least $39,153.47 over the 17 years and 6 months that she was in charge of Joey's care. Even if she spent only $187.50 per month on Joey during this peri-

od the total $39,154.49 would be fully explained.

Appellants contend that the trial court erred in finding that the trustee satisfied her burden of proving $39,153.47 had been expended out of the trust for the benefit of the life beneficiary because the trustee failed to produce any legal cognizable evidence of such disbursement. Trustee contends there is no proof of such failure and the fact that complete records were not kept does not justify that expenditures were not made.

In court-tried cases, the appellate court must affirm the judgment of the trial court unless no substantial evidence supports it, unless it is against the weight of the evidence, or unless it erroneously declares or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). A trustee is under a duty to keep clear and accurate accounts to his beneficiaries. *Engelsmann v. Holekamp*, 402 S.W.2d 382, 389 (Mo. banc 1966). The general rule of law applicable to a trustee burdens him with the duty of showing that the account which he renders and the expenditures which the trustee claims to have made were correct, just and necessary. *Engelsmann*, 402 S.W.2d 382 at 389. If fraud or overreaching is proven, stricter accountability exists. *In Re Estate of Condren*, 756 S.W.2d 599, 603 (Mo.App. 1988). Here, appellants have not alleged nor have they proven either fraud or overreaching existed.

The principal penalty in this state usually applied to a trustee who fails to keep proper records of his trust is that "all presumptions are against him on his accounting, or that all doubts on the accounting are resolved against him." The trustee has the burden of showing on the accounting how much principal and income he has received and from whom, how much disbursed and to whom, and what is on hand at the time. *Engelsmann*, 402 S.W.2d 382 at 390.

The purpose of the strict accounting rule is to ensure that the funds are expended by the trustee for the beneficiary and are not diverted for the benefit of the trustee. *Engelsmann*, 402 S.W.2d 382 at 389–390; *Zelch v. Ahlemeyer*, 592 S.W.2d 482 at 485. The rule also ensures that when the trust is wound up the assets not spent on behalf of the beneficiary are available for distribution according to the testator's will. *Zelch*, 592 S.W.2d 482 at 485. In this case, there is no doubt the trustee, Mrs. Stemler, did not keep detailed records and that if the rule of strict accounting were to be applied literally she should be required to pay back $39,153.47 to the estate. There is, however, in this case, no reason for such a harsh application of the law. There is no suggestion, much less any evidence, that Mrs. Stemler directed the funds for her own benefit and, in fact, the evidence shows these funds were spent on Joey. Indeed, appellants concede there is no fraud here. The fact that the Trustee, Mrs. Stemler, may have spent $187.50 per month on her charge seems entirely reasonable.

There is, in short, no basis for this court to conclude that the policies underlying the legal requirement of strict accounting have in any way been frustrated in this case. If this court were to require the Trustee, Mrs. Stemler, to repay $39,153.47 to the trust estate, we would be elevating form over substance. Our decision here on the unique facts of this case does not in any way undercut the long-standing requirement of strict accounting of trustees. Instead, we recognize only that in the very special circumstances of this case, application of the traditional rule would be both harsh and unnecessary. Thus, as to the expenditures we are unable to conclude that the trial court's finding allowing these credits is erroneous. Point denied.

Appellants' also contend that the trial court erred in finding that Mrs. Stemler's purchase of the residence did not violate her duty of loyalty to the trust beneficiaries because the law prohibits such a purchase and renders it voidable at the behest of the trust beneficiaries. There is no doubt that in Missouri "a party holding a fiduciary relation to trust property cannot, either directly or indirectly, become

the purchaser of such property, or transfer it to his own use or benefit; and if he does the sale or transfer is voidable and will be set aside...." *Johnson v. United Railways Co.*, 281 Mo. 90, 219 S.W. 38, 66 (1920).

> The law looks with great disfavor upon a purchase by trustees of the trust property in their charge, and upon a direct attack will set aside such transactions upon slight proof of fraud, deception, unfairness, or overreaching. However, the purchase by a trustee of trust property is not void, but only voidable at the instance of the injured party or some one standing in his shoes.

*Guy v. Mayes*, 235 Mo. 390, 138 S.W. 510, 512 (1911).

■ But again on the very special facts of this case there is no warrant to question the Trustee's purchase of the Itaska property. The Testator expressed his desire that Joey have access to his family home and provided that Trustee could live rent free with the trust paying all expenses. Given the limited assets of the estate and the Testator's intention that Joey be able to visit his homesite, Mrs. Stemler's decision to purchase the property is easily explained. A trustee has an obligation to preserve the estate's assets. The standard of care in application of this duty is that of a person of ordinary prudence. *Parker v. Pine*, 617 S.W.2d 536 (Mo.App.1981). Restatement (Second) of Trusts § 174. By purchasing the property at a price that all concede was the fair market value, Mrs. Stemler gave up the benefit of an expense free place of abode and relieved the estate of the expenses of maintenance, taxes, and insurance. In effect by purchasing the home and reducing the demand on the estate's assets, Mrs. Stemler acted to ensure that the trust assets would be adequate to accomplish the Testator's intent of providing for both institutional care and ensuring that Joey would have a continued opportunity to stay at the family home.

■ Although the law prohibits the trustee from purchasing trust assets and in fact Mrs. Stemler did purchase assets of the trust estate, the law also requires the trustee to carry out completely the testator's intent and to manage the assets in a fiscally prudent manner and to preserve the assets. *Parker v. Pine*, 617 S.W.2d 536 at 539, 540; *Zelch*, 592 S.W.2d 482 at 485. By purchasing the home and foregoing the benefits of a rent free existence Mrs. Stemler not only conserved the assets, but more importantly, acted to accomplish the Testator's intention that his son Joey be able to spend time at the family home. In these circumstances we decline to compel the house to be reconveyed.

At the time the trustee began administration of trust in 1974, she was 75 years old. When Joey died in 1987, Mrs. Stemler was 87 years old. There is no basis on the record before this court for believing that this elderly woman did anything other than faithfully and thoroughly follow her brother's intention to care for his son in the best possible manner with the limited assets of his estate. It would have been better, of course, if Mrs. Stemler had maintained careful records of all her expenditures on behalf of Joey. Absent the Testator's concern that Joey be able to visit the house it probably would have been better if Mrs. Stemler had sold the home to a third party.

The remaindermen here do not suggest that the estates' assets available for distribution today would have been greater if Mrs. Stemler had kept better records. The remaindermen do not suggest that the corpus of the estate available for distribution today would be greater if Mrs. Stemler had sold the property to a third party. Indeed they could hardly take this position. By purchasing the home Mrs. Stemler acted in fact to preserve the estate's assets. There is no basis for believing that the trustee's action in any way diminished the assets available for distribution at the conclusion of the trust. We will not order Mrs. Stemler to repay or recover the property. Point denied.

Affirmed.

KAROHL and GRIMM, JJ., concur.